[No. B069732. Second Dist., Div. Two. Nov. 5, 1993.]

In re MICHAEL G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL G., Defendant and Appellant.

## COUNSEL

Anthony J. Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and Emilio E. Varanini IV, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—This case involves the question of whether a product label may be introduced as an exception to the hearsay rule. Under the facts presented, our answer is yes.

### FACTUAL AND PROCEDURAL HISTORY

Michael G. appeals from the order declaring him to be a ward of the court (Welf. & Inst. Code, § 602) by reason of his possession of a substance containing toluene with the intent to inhale for the purpose of intoxication (Pen. Code, § 381, subd. (a)). He contends on appeal: "I. The list of ingredients on a product label is pure hearsay without exception and therefore inadmissible to prove the ingredients of a product. II. It was an abuse of discretion for the trial court to judicially notice toluene was an ingredient in the spray can."

■ The evidence in a juvenile proceeding must be construed in the light most favorable to the finder of fact. (*In re Dennis B.* (1976) 18 Cal.3d 687, 697 [135 Cal.Rptr. 82, 557 P.2d 514].) Accordingly, the evidence established that around 2 p.m. on November 29, 1991, appellant was observed outside a Covina restaurant with his hands cupped around his mouth, breathing in and out of a paper bag for about three minutes. Martha Favela, an employee, suspected he was consuming drugs and went outside. From a distance of eight to ten feet, Favela smelled a paint-like odor emanating from appellant and the girl standing with him. When Favela asked them to leave, the girl laughed, refused to leave, and said they were using the bag because of an asthmatic condition.

Favela called the police. Although appellant and the girl left the restaurant premises about 10 to 15 minutes after the call, Covina Police Officer Steven McIntosh found them nearby. A strong chemical odor akin to paint or glue came from appellant and the girl. Appellant's eyes were red, he swayed back and forth, giggled, and had slurred speech. Appellant's hand-eye coordination appeared to be impaired because he fumbled a few seconds before opening a white clear bag that contained an 11-ounce can of Krylon acrylic crystal-clear paint, 2 smaller brown paper bags, and some folded napkins. The brown bags and napkins were moist to the touch. Based on these observations, McIntosh, who had extensive training in drug abuse and had made approximately 20 prior arrests involving toluene, arrested appellant. He concluded that appellant's physical symptoms were manifestations of toluene intoxication and that appellant possessed the above items in order to become intoxicated. McIntosh admitted he could not distinguish the odor of toluene from the odor of other substances such as paint or glue.

Although the spray paint can, bags, or napkins were not chemically analyzed, the label on the can listed toluene as an ingredient, warned that the ingredients could cause various symptoms dangerous to health, and provided an antidote should the paint be swallowed or irritate the skin.

The defense interposed a hearsay objection to the admission of the label. The trial court took judicial notice that "the public relies on statements on cans as to the antidotes and as to the danger of the products that are put on them," and received the label into evidence under Evidence Code section 1340.[1]

Appellant presented no defense. In closing argument, defense counsel asserted that the People failed to prove that the can contained toluene or that appellant was under the influence of toluene.

## DISCUSSION

Evidence Code section 1200 provides, in pertinent part: "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. (b) Except as provided by law, hearsay evidence is inadmissible."

■ The purpose of the "hearsay rule" is to preserve a party's Sixth Amendment right to confront and cross-examine an adverse witness and to disallow testimony coming from a witness who is not under oath and whose demeanor cannot be observed by the trier of fact. (1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 558, p. 533.) Like most general propositions, the hearsay rule has its exceptions, most of which are codified in the Evidence Code commencing at section 1220. The reasoning behind such exceptions is that experience has shown that there are situations where it is impossible or impractical to present an actual witness, yet the proffered necessary evidence is inherently trustworthy under the circumstances. (5 Wigmore, Evidence (Chadbourn rev. 1974) § 1420, p. 251; McCormick on Evidence (3d ed. 1984) § 253, p. 753.)

■ The parties correctly agree that the information on the label relative to the ingredients of the spray can was hearsay. The disagreement is whether the label falls within a recognized exception to the hearsay rule.

---

[1]Evidence Code section 1340 provides: "Evidence of a statement, other than an opinion, contained in a tabulation, list, directory, register, or other published compilation is not made inadmissible by the hearsay rule if the compilation is generally used and relied upon as accurate in the course of a business as defined in Section 1270."

Evidence Code section 1270 states that ". . . 'a business' includes every kind of business, governmental activity, profession, occupation, calling, or operation of institutions, whether carried on for profit or not."

While we agree with appellant that a manufacturer might have devious reasons for failing to advise the public of the dangers of its product, the converse is not true. A label *including* (rather than excluding) a hazardous substance is inherently trustworthy, in that a manufacturer would have no interest in proclaiming that the product contained such a substance if in fact it did not.[2] However, our holding is limited strictly to the *presence* of a hazardous substance, and not to its quantity or quality. The trial court was thus entitled to take judicial notice that the public relies on the dangers and antidotes listed on a label as a matter of common knowledge, and to conclude that the label was generally used and relied on as accurate in the course of a business within the meaning of the compilation exception to the hearsay rule of Evidence Code section 1340. (Evid. Code, § 451, subd. (f); *People* v. *Silva* (1924) 67 Cal.App. 351, 357-358 [227 P. 976]; *In Interest of T.D.* (1983) 115 Ill.App.3d 872 [71 Ill.Dec. 20, 450 N.E.2d 455].) The court therefore properly admitted the label under that exception.

In support of his argument against admissibility, appellant cites a variety of cases, each of which is factually inapposite. *People* v. *Rath Packing Co.* (1978) 85 Cal.App.3d 308 [149 Cal.Rptr. 431] and *People* v. *Beggs* (1945) 69 Cal.App.2d Supp. 819 [160 P.2d 600] deal with manufacturers whose product labellings were deemed to lack trustworthiness. There, the manufacturers allegedly mislabelled the net weight, quality, or quantity of their food products. *Nesje* v. *Metropolitan Coach Lines* (1956) 140 Cal.App.2d 807 [295 P.2d 979] and *Miller* v. *Modern Business Center* (1983) 147 Cal.App.3d 632 [195 Cal.Rptr. 279], also cited by appellant, did not involve commercial labelling, and thus are distinguishable. *Nesje* concerned an autopsy report regarding a decedent's blood-alcohol level; however, there was no foundation as to the source of the blood that was analyzed. *Miller* involved an advertisement in a magazine regarding the availability of a newer model of a certain brand of copy machine. Finally, in *People* v. *Stuart* (1956) 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705], a pharmacist filled a prescription from a mislabelled bottle of sodium citrate, which unknowingly contained a low (though lethal) amount of nitrate. Therefore, *Stuart* is also factually inapplicable in that it involved the *omission* (rather than the inclusion) of the hazardous material from the label.

---

[2]Toluene is commonly used in products such as paint, glue, and paint thinner. Toluene is a hazardous substance under both state and federal law. As such, a manufacturer is required to affirmatively list it on the product label and to state the danger it poses as well as the remedial action to be taken if harmfully used. (Bus. & Prof. Code, § 4160; Health & Saf. Code, § 28743 et seq.; Cal. Code Regs., tit. 8, § 5228; Federal Hazardous Substances Act, 15 U.S.C. § 1261 et seq.) Failure to comply with such labelling laws may subject a manufacturer to a variety of penalties. (*DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 343-344 [195 Cal.Rptr. 867].) Further, Penal Code section 381, subdivision (a) makes it a misdemeanor to possess toluene or any substance containing toluene for the purpose of causing intoxication or a similarly related condition.

The related contention that the juvenile court abused its discretion in taking judicial notice that toluene was an ingredient in the spray can is without merit. The record shows that the court took judicial notice only of the fact that the public relies on statements on cans as to antidotes and product dangers.

The order of wardship is affirmed.

Boren, P. J., and Fukuto, J., concurred.