A99A0735. LEDFORD v. THE STATE.
(520 SE2d 225)

ELDRIDGE, Judge.

A Whitfield County jury found Jeffery Lynn Ledford guilty of intentional inhalation of paint fumes as proscribed by OCGA § 16-13-91. He appeals, challenging the sufficiency of the evidence.

The Whitfield County Sheriff's Office received a call regarding a domestic dispute involving Ledford, in which Ledford's trailer was burned. Ledford was located in another trailer near the scene. The deputies knocked on the door of the trailer, and Ledford answered. They asked him if he was alright. Ledford started to cry. He immediately held out his wrists and blurted out, "I'm sorry, I'm ready to go. I'm sorry; I burned my trailer down." Ledford was extremely emotional and upset; he was "nervous and shaking." The deputies attempted to calm Ledford down and ask him what happened. While relating his version of events, Ledford pointed to a paper bag containing a can of gold spray paint and paper towels saturated with gold paint. Ledford told the deputies that he had been "huffing" paint and that he did so whenever "his nerves are shot." Ledford had traces of gold paint around his nose and mouth. The label on the spray can stated that the paint contained "toluene." At trial, the State introduced similar transaction evidence showing that Ledford had pled guilty to intentional inhalation of paint fumes on three prior occasions. *Held*:

In challenging the sufficiency of the evidence introduced against him, Ledford contends that there was insufficient evidence to demonstrate that the contents of the spray paint can included the chemical toluene. We are constrained to agree.

The offense of intentional inhalation occurs when one intentionally, for the purpose of causing a condition of intoxication, etc., smells or inhales the fumes from any "model glue." OCGA § 16-13-91. In that regard, "model glue" is defined as any chemical substance containing certain proscribed chemicals, inter alia, acetone and toluene. OCGA § 16-13-90. Ledford was indicted for inhaling "paint containing acetone and toluene." Thus, the presence of either acetone or toluene is an essential element of the offense of intentional inhalation as indicted.

In this case, the State proved that the inhaled paint contained the chemical toluene solely through the introduction of the gold spray paint can which carried a contents label identifying toluene as one of its ingredients. There was no objection to the introduction of the can or to the reading of its label to the jury. However, this evidence, alone, is insufficient as a matter of law. The presence of toluene, an essential element of the crime, cannot be proved only through the introduction of the spray can. The contents label is hearsay and, absent a recognized exception, cannot prove the truth of the matter asserted thereon. See, e.g., *Taylor v. State*, 144 Ga. App. 534 (241 SE2d 590) (1978). Hearsay, even when admitted into evidence without objection, lacks probative value to establish any fact. *Howell Mill/ Collier Assoc. v. Pennypacker's*, 194 Ga. App. 169, 171 (2) (390 SE2d 257) (1990). See also *Curtis v. State*, 190 Ga. App. 173, 175 (378 SE2d 516) (1989).[1] Since no competent evidence proved that the inhaled paint contained either acetone or toluene as required by OCGA § 16-13-90, the State failed to prove the crime pursuant to OCGA § 16-13-91.

The dissent's reliance on the necessity exception to the hearsay rule is misplaced. The necessity exception to the hearsay rule has two components: (1) necessity and (2) particularized guarantees of trustworthiness. *Chapel v. State*, 270 Ga. 151, 155 (510 SE2d 802) (1998).

1. With regard to the first component, necessity, the dissent asserts that a necessity for an exception to the hearsay rule is established by the fact that: "an array of witnesses would be necessary to

---

[1] Competent evidence of the presence of the chemical toluene in the contents of the can would necessarily entail a chemical analysis of the contents of the can. That the label identifies "toluene" as an ingredient as a matter of law *proves* nothing about the actual contents of the can at the time of the alleged offense, or that it was in a chemical state capable of being inhaled.

qualitatively analyze the container's contents and to establish production control and packaging in order to introduce the evidence." Although the dissent does not credit the source of such statement, the statement is essentially a direct quote from the case of *Moore v. State*, 811 SW2d 848 (Mo. App. 1991): "an array of witnesses would be required to establish qualitative analyses of substances as well as production control and packaging in order for the items to be admissible in evidence." Id. at 850. However, the statement in *Moore* was directed at establishing strict compliance with Missouri's multiple statutory procedures for taking blood in *preparation* for chemical testing and did not go to the actual test of the blood itself.[2] The statement is completely inapplicable to the instant case. Clearly, there is no "array" of witnesses required to testify that a spray can contains toluene, other than the lab technician who conducts the chemical test and the chain of custody witness — just like in any other drug case where the State must prove the presence of a prohibited substance.

In order to use the "necessity exception" as a method to abrogate a criminal defendant's constitutional right to confront the witnesses against him, especially those that establish an essential element of the indicted offense, there must be a genuine necessity.

Under the necessity exception to the hearsay rule, hearsay statements are admissible when the evidence is necessary and when there are particular guarantees of trustworthiness. We have previously found that the first criteri[on] is met when the declarant is deceased. However, death or unavailability of the declarant cannot alone satisfy the necessity component without allowing the exception to swallow the rule. Additionally, the proponent of the evidence must show that the statement is relevant to a material fact *and that the statement is more probative on that material fact than other evidence that may be procured and offered.* These additional elements will help ensure that the necessity exception does not render the rules of evidence meaningless and allow the conduct of trials by hearsay.

(Emphasis supplied.) *Chapel v. State*, supra at 155; *Lee v. State*, 270 Ga. 626, 627 (2) (513 SE2d 225) (1999). Here, the first prong of the

---

[2] Missouri Code § 577.029 specifically requires blood to be drawn with "a previously unused and sterile needle and sterile vessel. . . . A non-alcoholic antiseptic shall be used for cleansing the skin." *Moore*, supra at 850. The "array" of witnesses referenced by the court went to testimony regarding the sterility of the needle, the previous non-use of the needle, the sterility of the vessel, and the non-alcoholic nature of the cleansing solution. All of these requirements are procedural, go to admissibility, and do not impact on an essential element of a criminal offense.

necessity exception cannot be satisfied, because evidence regarding the contents of the spray can may be procured and offered through the testimony of a crime lab technician, without resorting to the hearsay label on the can. The fact that it would be easier to introduce the can does not rise to the level of showing "necessity" pursuant to the necessity exception to the hearsay rule.

2. With regard to the second prong of the necessity exception, "particular guarantees of trustworthiness," the dissent relies upon five additional foreign cases in order to establish such. However, a review of the basis for each case's holding (as opposed to selected excerpts from each case) demonstrates that the rationale for admissibility is not applicable under Georgia law.

*In the Interest of T. D.*, 115 Ill.App.3d 872 (450 NE2d 455) (1983), the court determined that a contents label was admissible based upon the language of an Illinois statute which required such labeling *in conjunction with* an Illinois evidentiary statute regarding "trade inscriptions" which makes labels made in the ordinary course of business self-authenticating. Id. at 458-459. Georgia has neither statute.

*In re Michael G.*, 19 Cal.App.4th 1674 (24 Cal.Rptr.2d 260) (1993), determined that a content label was admissible based upon a specific California statutory exception to the hearsay rule, the "compilation exception," that permitted the introduction of the label under the business records exception to the hearsay rule. Id. at 262. Georgia has no such exception.

In *Commonwealth v. Harvey*, 666 A2d 1108 (Pa. 1995), the court found that the label at issue was not hearsay because it was not being offered for the truth of the matter asserted thereon, i.e., the contents of the container, but as an identifier. Id. at 1110. Later, the court took judicial notice of the contents of the identified product based upon a State-published digest regarding such contents, the Pennsylvania Bulletin, which publication was required by State Control Board regulations. Id. at 1113. In the instant case, the label on the can was the sole evidence offered to prove the contents of the can.

*Wirth v. State*, 55 Wis.2d 11 (197 NW2d 731) (1972), focused on a State statute requiring that a pharmacist maintain a narcotics registry and label any container for a narcotics substance. Id. at 732-733. In a trial for the improper purchase of an excessive amount of a narcotic substance, codeine, the pharmacist was called to testify as to his sale of a bottle of the narcotic to the defendant. The court found that the State had sufficiently shown the bottle to contain the narcotic in that: (1) the bottle was kept in a nonaccessible area reserved for narcotics; (2) it was sealed with an unbroken seal; (3) it was dispensed by a registered pharmacist who believed it to contain a narcotic substance; (4) it was labeled as containing a narcotic substance; (5) it was labeled and sealed by the manufacturer in response to *both* fed-

eral and *state laws* regulating manufacturing, packaging and selling or dispensing narcotics; and (6) the defendant in making the purchase signed the narcotics registry as required by law, thereby demonstrating that the bottle he purchased contained a narcotic substance. Id. at 731-732. Most importantly, the pharmacist who kept the narcotics registry and sold the product to the defendant was called to testify and was subject to cross-examination on all of the above-referenced points. Id. at 733. Contrary to the dissent's assertions, the label alone was not admitted to prove the contents of the bottle, and the defendant's right to cross-examination was not abridged.

Finally, in *State v. Mitchell*, 18 Ohio App.2d 1 (246 NE2d 586) (1969), as in the above case, *Wirth v. State*, supra, the defendant was tried for purchasing an excessive amount of codeine. Again, the State proved the contents of the bottle, not through the label alone, but through the testimony of a pharmacist who was under the same State statutory scheme as in *Wirth* to maintain a narcotics registry. The court found the registry admissible under the State's business records exception to the hearsay rule, Ohio Code § 2317.40, Revised Code, which specifically included a "mercantile inconvenience" aspect of the business record exception that was found to encompass product labels. Id. at 590-591. In addition, the pharmacist testified and was subject to cross-examination regarding the narcotics registry, in protection of the defendant's confrontation rights. In this case, we are not dealing with the same type of crime, the same State statutory regulatory scheme, or the same exception to the hearsay rule.

Clearly, a close inspection of the actual holdings in the above-cited cases is required. Not one of the cited cases permitted the introduction of a product label under the "necessity exception" to the hearsay rule. Each case had an independent evidentiary and/or statutory basis for admission of the product label. Most importantly, not one of the cited cases permitted a product label alone to prove an essential element of the State's case against a criminal defendant.

That it would be more convenient and expedient to introduce the spray can label to prove the contents of the can is indisputable. And perhaps our State legislature may provide for an exception that would permit just that. But for now, the spray can label is hearsay and does not fall within any recognized exception in this State. A criminal defendant has a right to be tried and convicted on competent evidence. *Miller v. State*, 266 Ga. 850 (472 SE2d 74) (1996). Ledford's conviction must be reversed.

*Judgment reversed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur. Blackburn, P. J., and Smith, J., concur specially and in judgment only. Johnson, C. J., and Pope, P. J., dissent.*

SMITH, Judge, concurring specially and in the judgment only.

I concur in the result reached by the majority, but I do not agree with all that is said in the majority opinion. I therefore cannot concur fully. Although I appreciate the reasoning in the dissent and might agree with it personally, in my view it expands the law with regard to exceptions to the hearsay rule to an extent not permitted to this court. Such an expansion is best left to the Supreme Court of Georgia or the Georgia General Assembly. I therefore concur in the majority opinion, but in judgment only.

I am authorized to state that Presiding Judge Blackburn joins in this special concurrence.

POPE, Presiding Judge, dissenting.

I respectfully dissent. Although there appear to be no Georgia opinions directly on point, a series of opinions from other jurisdictions apply an exception to the hearsay rule when considering labels which are required by law to show the contents of the container. The reasoning of these cases is sound and consistent with the general principles of Georgia law, and the evidence should be admitted.

"The statutory exceptions to the rule against the admission of hearsay are not exhaustive and exclusive of all other cases. [Cit.] An exception will be allowed 'from necessity' where 'necessity' and 'particularized guarantees of trustworthiness' are established. [Cit.]" *McKissick v. State*, 263 Ga. 188, 189 (3) (429 SE2d 655) (1993). *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993); OCGA § 24-3-1 (b).

Case law from other jurisdictions confirms the majority's conclusion that the label on the can of paint is hearsay. See, e.g., *In re Michael G.*, 19 Cal.App.4th 1674 (24 Cal.Rptr.2d 260) (1993) (label on can of spray paint); *Moore v. State*, 811 SW2d 848 (Mo. App. 1991) (label on pharmaceutical container); *In the Interest of T. D.*, 115 Ill.App.3d 872 (450 NE2d 455) (1983) (label on tube of glue); *Wirth v. State*, 55 Wis.2d 11 (197 NW2d 731) (1972) (label on medication bottle); *State v. Mitchell*, 18 Ohio App.2d 1 (246 NE2d 586) (1969) (label on drug bottle). But in each of these cases, the court held that the label could be introduced into evidence under an exception to the hearsay rule.

In *In re Michael G.*, a California appellate court affirmed an order declaring the defendant to be a ward of the court by reason of his possession of a substance containing toluene with the intent to inhale for the purpose of intoxication. The court applied a California statute establishing a hearsay exception for "published compilations" that were "generally used and relied upon as accurate in the course of a business." Id. at 1677. The court reasoned,

> A label including (rather than excluding) a hazardous substance is inherently trustworthy, in that a manufacturer would have no interest in proclaiming that the product contained such a substance if in fact it did not. . . . The trial court was thus entitled to take judicial notice that the public relies on the dangers and antidotes listed on a label as a matter of common knowledge, and to conclude that the label was generally used and relied on as accurate in the course of a business within the meaning of the [published] compilation exception to the hearsay rule.

Id. at 1678. Although this result is based on a specific statute, the court found that the labels were inherently trustworthy. And cases from other jurisdictions have found information from labels admissible in the absence of a statutory exception to the hearsay rule.

In *Moore*, a defendant appealed an order suspending his driving privileges on the ground that he was convicted of driving under the influence based on hearsay evidence. 811 SW2d at 850. With regard to a blood test to determine blood alcohol content, a Missouri statute required the blood tester to use a "sterile needle and sterile vessel" to draw the blood and a "nonalcoholic antiseptic" to clean the skin. The phlebotomist's testimony that the two items were sterile and that the antiseptic was nonalcoholic was based on the label on their respective packages. The court therefore had to address whether the labels, which were obviously hearsay, could be used to prove the contents of the containers to which the labels were attached.

The Missouri appellate court stated,

> labels placed on pharmaceutical and hazardous substances suffice to establish "circumstantial probability of trustworthiness," and are admissible as evidence to prove the contents of the substances in the containers to which the labels are attached. [Cit.] Otherwise, an array of witnesses would be required to establish qualitative analyses of substances as well as production control and packaging in order for the items to be admissible in evidence.

811 SW2d at 850. The court held that this situation warranted a special exception to the traditional hearsay rule. Id. at 852 (and cases cited therein from Iowa and Maine).

In *In the Interest of T. D.*, the Appellate Court of Illinois affirmed an adjudication of wardship alleging a minor had sniffed glue containing "toluol" in violation of state law. 450 NE2d at 456. The court noted that the label was a statement by the manufacturer as to the contents of the product. Id. at 457. The court disagreed that the label

fell within Illinois' business record or public document exceptions to the hearsay rule, but found that the label was sufficiently trustworthy to be an exception. Id. at 459. The court went on to explain that it found trustworthiness because the label was required by state law, any misinformation would be a violation of the law and would probably provide a basis for civil liability on the manufacturer, and there was no indication of tampering or adulteration of the contents. Id.

The Supreme Court of Wisconsin affirmed a conviction of misuse of narcotics which was based in part on a label which stated the bottle contained a substance containing codeine, a narcotic. *Wirth*, 197 NW2d at 733-734. Citing Wigmore on Evidence, the court held that the surrounding circumstances were sufficient to show probability of trustworthiness of the label and the fact that the substance in the bottle contained a narcotic. Id. at 733. The court quoted Professor Wigmore's third edition,

> "We see that under certain circumstances the probability of accuracy and trustworthiness of [the] statement is practically sufficient, if not quite equivalent to that of statements tested in the conventional manner. . . . It is merely that common sense and experience have from time to time pointed them out as practically adequate substitutes for the ordinary test, at least, in view of the necessity of the situation. [5 Wigmore, Evidence (3rd ed.), p. 204, § 1422.]"

Id.

The Federal Hazardous Substances Act, 15 USC §§ 1261-1278, and the corresponding regulations, 16 CFR 1500, require labeling of substances deemed hazardous, including toluene, with the common or usual name or chemical name of the substance. Failure to provide such a label is considered misbranding and is a violation. 16 CFR 1500.3. As stated in *In re Michael G.*, there is no incentive for the manufacturer to label a product as containing a substance when in fact it did not.

A necessity for an exception to the hearsay rule is established by the fact that an array of witnesses would be necessary to qualitatively analyze the container's contents and to establish production control and packaging in order to introduce the evidence. Particularized guarantees of trustworthiness for the information contained on these labels are established by the federal law requiring labels, the ubiquitous use of product labels in our society, and the common reliance on these labels. Thus the elements of the necessity exception to the hearsay rule are present, and the can and its label should be allowed into evidence. See *McKissick v. State*, 263 Ga. at 189. This rule would be strictly limited to the presence of the hazardous sub-

stance, and not to its quantity or quality, and only to those substances required by law to be identified on the label.

Finally, contrary to the statement in the majority opinion, the dissent does not rely on *Commonwealth v. Harvey*, 666 A2d 1108 (Pa. 1995).

I am authorized to state that Chief Judge Johnson joins in this dissent.

DECIDED JUNE 28, 1999 —
RECONSIDERATION DENIED JULY 21, 1999

*Coppedge, Leman & Ward, David L. McGuffey*, for appellant.

*Kermit N. McManus, District Attorney, Matthew A. Rankin, Assistant District Attorney*, for appellee.