A01A0522. POOLE v. THE STATE.
(548 SE2d 113)

ANDREWS, Presiding Judge.

Jimmy Lee Poole appeals from the trial court's denial of his motion for new trial following his conviction, after a bench trial, of two counts of driving under the influence of "any glue, aerosol, or other toxic vapor to the extent that it was less safe for him to drive" (OCGA § 40-6-391 (a) (3)); driving on the wrong side of the road; and

improper stopping.[1]

1. Poole's second enumeration is that the trial court erred in failing to grant his motion for directed verdict because the State failed to prove the elements of the charges.

> As a preliminary matter we note that the trial court could not have directed a verdict of acquittal because there is no verdict in a bench trial. Therefore, even if a motion for a directed verdict was made, such a motion has no meaning when a case is tried without a jury. See *Blair v. State*, 216 Ga. App. 545, 546 (1) (455 SE2d 97) (1995). As pointed out in *Blair*, the issue is whether the evidence was sufficient at trial to support a conviction under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Jones v. State*, 226 Ga. App. 608, 609 (487 SE2d 89) (1997). See also *Goodson v. State*, 242 Ga. App. 167 (2) (529 SE2d 175) (2000).

Considering the legal sufficiency of the evidence under *Jackson*, supra, and viewing the evidence with all inferences in favor of the factfinder's conclusions, the evidence was that on June 19, 1999, Atlanta Officer Skelton responded to a suspicious vehicle call. Upon arriving at the scene, he found Poole's truck sitting in the middle of the road, headed in the wrong direction. Officer Baxter also responded, and the two officers found Poole slumped over the steering wheel, passed out. The truck's motor was running, it was in gear, and Poole's foot was on the brake pedal. The officers attempted to wake Poole, whereupon Poole immediately stuck a hose, attached to a canister in the passenger's seat, up to his nose, and the officers heard a "hissing" sound. When the officers finally got Poole out of his truck, they had to hold him up, his speech was slurred, his pupils were dilated, and he appeared "out of it." Poole told the officers that he was having family trouble and that he used and had a problem with Freon. The canister in the truck appeared to the officers to be marked "Freon." In the opinion of the officers, Poole was under the influence of an inhalant to the extent that he was less safe to drive.

On July 13, 1999, at approximately 10:30 a.m., Shepherd was at work on Menlo Drive in Atlanta when he heard a crash. Running outside, he found his pickup truck had been run into by one driven by Poole. Poole was attempting to start his truck, which had water running out of the radiator and steam coming from the hood. Shepherd, a former commercial truck driver for 19 years, testified that he was

---

[1] One count of DUI was alleged to have occurred on July 13, 1999. The second count of DUI and the remaining charges were alleged to have occurred on June 19, 1999. The charge of improper stopping was merged for sentencing purposes.

familiar with impaired drivers. When asked what happened, Poole responded that his brakes gave way and he could not get the truck to crank. In Shepherd's opinion, Poole seemed unaware that he had struck Shepherd's truck. Poole had a red hose connected to a container labeled "R-22" draped across his leg. Poole would put his thumb over the end of the hose, turn the tank on, stick the hose up his nose, and inhale. Police were called, and Officer Goode arrived to find Poole with the rubber hose in his hand, incoherent, and unable to respond initially. Goode got Poole out of the truck, and he was unsteady on his feet. He said he had just come from court on a DUI charge. Asked for his license, he handed over a citation. Poole did not smell of alcohol, but was partially incoherent and unsteady on his feet. Goode observed the markings "R-22 refrigerant" on the canister, and Poole stated that he worked in air conditioning repair and that was the refrigerant. In Officer Goode's opinion, Poole was under the influence of an inhaled substance which made him less safe to drive.

Officer Corroto testified that he was certified by the National Traffic Safety Administration and International Association of Chiefs of Police as a drug recognition expert. As such, he had received training on inhalants used to produce mind altering results. He testified that there are three subgroups of inhalants: volatile solvents, aerosols, and anesthetic gases. Freon is an aerosol inhalant and, when inhaled, will cause the person to appear dazed and disoriented, lack muscle control, have a flushed appearance, and, in general, appear similar to someone suffering significant alcohol impairment. Officer Corroto opined that one found slumped over the wheel, passed out, with a poor ability to walk, slurred speech, and poor comprehension of events was consistent with one under the influence of Freon.

The evidence was legally sufficient. *Jackson*, supra.

2. In his first enumeration, Poole contends that the trial court erred in allowing inadmissible hearsay testimony of the three officers and Shepherd "as to what the canister contained," based on *Ledford v. State*, 239 Ga. App. 237 (520 SE2d 225) (1999).

In *Ledford*, the accused, who acknowledged "huffing" paint from a spray can, was charged under OCGA § 16-13-91, with inhaling "paint containing acetone and toluene." That Code section prohibits, for the purpose of causing, inter alia, intoxication, "intentionally smell[ing] or inhal[ing] the fumes from any model glue. . . ." In OCGA § 16-13-90, model glue is defined as any "glue, cement, solvent, or chemical substance containing one or more of the following chemicals: [numerous chemicals listed, including] toluene."

The only proof at trial of the presence of toluene in the paint was the introduction of the spray paint can, the label of which listed the ingredients, including toluene. This Court found that this hearsay,

alone, was legally insufficient to prove the presence of toluene, which was an essential element of the crime charged.

Here, in contrast, the presence of a specific chemical was not an essential element of the crime. Poole was charged with being under the influence of "any glue, aerosol, or other toxic vapor to the extent that it [was] less safe for [him] to drive," in violation of OCGA § 40-6-391 (a) (3). That Code section, unlike the Code section involved in *Ledford*, does not require proof of the chemical composition of the glue, aerosol, or other toxic vapor, only that the person is under the influence of such glue, aerosol, or toxic vapor to the extent that it is less safe for the person to drive.

Additionally, here there was proof in addition to the label to show that Poole had, in fact, been inhaling Freon. First, Poole was seen inhaling from a hose attached to a canister labeled "R-22" on July 13 by both Shepherd and the responding officer. Also, Poole acknowledged to the officer that he worked in air conditioning and that the canister was "the refrigerant." On June 19, having been seen by Officers Skelton and Baxter inhaling from a hose attached to a canister marked "Freon," Poole acknowledged to Officer Skelton that he had a problem with Freon. Finally, there was testimony by a drug recognition expert that Freon is an aerosol subject to abuse and that the actions of Poole were consistent with inhaling Freon.

There was no error here because there was proof that Poole was under the influence of an inhalant, circumstantially proven to be Freon, to the extent that it was less safe for him to drive. See *Kevinezz v. State*, 265 Ga. 78, 79 (2) (454 SE2d 441) (1995).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED APRIL 27, 2001.

*Joe Morris III*, for appellant.

*Joseph J. Drolet, Solicitor-General, Michael S. LaScala, Assistant Solicitor-General*, for appellee.