## A01A2105. LARSEN v. THE STATE.
(558 SE2d 418)

BARNES, Judge.

Marie Jean Larsen appeals her conviction of driving under the influence following a bench trial, arguing that the court erred by "ignoring the overwhelming evidence" that she did not intend to drive. She also contends on appeal that the trial court "was biased and failed to hear [her] case impartially."

At her bench trial, Larsen stipulated that she was a less safe driver and that her blood alcohol level was 0.184 to 0.189. She defended the charges on the ground that she did not intend to drive, but was sleepwalking, and therefore did not have the guilty mind necessary for conviction.

On appeal from a bench trial, we view the evidence with all

inferences in favor of the factfinder's conclusion, giving due regard to the trial court's opportunity to judge witness credibility. *Poole v. State*, 249 Ga. App. 409, 410 (1) (548 SE2d 113) (2001). The issue before us is whether the evidence was sufficient at trial to support a conviction under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in the light most favorable to the judgment, the evidence at trial established that Larsen had a medical condition known as fibromyalgia and that one of her symptoms was an inability to sleep. To treat this disorder, every night at bedtime she took an antidepressant, a muscle relaxant, an antianxiety medication, and a fourth drug often used to treat Parkinson's disease. She testified that the night she was arrested, she had taken her prescribed medication at bedtime after drinking three glasses of wine earlier that evening and remembered nothing else until she awoke handcuffed in the back of a police car. She said that she did not remember drinking any more wine or getting in the car, that she would not have purposefully gone outside barefoot in short pajamas and a sweater, and that she had been a lifelong, vocal opponent to drinking and driving. Her daughter confirmed that her mother was adamantly opposed to drinking and driving, but further testified that on two previous occasions, she found her mother so intoxicated from drinking and taking her medication that she had passed out. The daughter also testified that she had argued with her mother about drinking and taking these drugs after the last time she passed out.

A doctor of pharmacology who specializes in sleep disorders and the drugs used to treat them testified that sleepwalking is a recognized side effect of the medications Larsen had been taking, particularly when taken in combination with each other and with alcohol. When a person sleepwalks, she can appear to be functioning normally, but would not be consciously aware of her actions and would remember nothing that occurred during the incident until she awoke. The expert also testified that the manufacturer's insert that should have been supplied with at least one of Larsen's medications would have warned against taking it and drinking alcohol, although the bottles themselves had no warning label.

The trial court, sitting as the trier of fact, said that the incidents of intoxication that Larsen's daughter described put Larsen on notice that she had a problem with alcohol and that "this was not a three-wine evening for you that got you to a point 184." After watching a videotape of the stop and arrest, the court was not convinced Larsen was in a sleep state, but that she intended to go for a drive, and thus found her guilty of driving under the influence.

1. Larsen argues on appeal that overwhelming evidence showed she had no intent to drive. "DUI is a crime of *general*, not specific,

intent." (Citation omitted; emphasis in original.) *Prine v. State*, 237 Ga. App. 679, 680 (2) (a) (515 SE2d 425) (1999). The State does not have to prove that the defendant intended to drive under the influence, only that the defendant was in an intoxicated condition and that she intended to drive. Id.

Further, "OCGA § 40-6-391 (b) specifically provides: 'The fact that any person charged with violating this Code section is or has been legally entitled to use a drug shall not constitute a defense against any charge of violating this Code section.'" *Kimberly v. State*, 180 Ga. App. 521 (1) (349 SE2d 489) (1986). Finally, "[o]nly involuntary intoxication sufficient to remove the mental capacity to distinguish between right and wrong in relation to the act may excuse a criminal act. Voluntary intoxication is not an excuse for any criminal act. OCGA § 16-3-4." *Bailey v. State*, 198 Ga. App. 632, 633 (2) (402 SE2d 363) (1991).

We recently reiterated that voluntary intoxication is not an excuse for a criminal act in a case in which the defendant alleged she had no intent to bite a police officer while she was high on crack cocaine. *Henderson v. State*, 252 Ga. App. 295 (556 SE2d 204) (2001).

In this case, the defendant testified that she had no intent to drive and that she remembered nothing from the time that she took her bedtime medication and the time she "came to" handcuffed in the back of a police car. However, the trier of fact, after watching a videotape of the defendant's arrest, did not find her testimony about being in a sleep state credible. He further pointed out that the defendant was on notice from her own daughter that she had a problem with alcohol, but that she chose to drink an excessive amount of alcohol the evening of her arrest. Credibility findings are exclusively for the trier of fact. *Gilmore v. State*, 242 Ga. App. 470, 471 (1) (530 SE2d 221) (2000); *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Larsen guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, supra, 443 U. S. at 307.

2. Larsen also contends that the trial judge "was biased and failed to hear appellant's case impartially," based on selected remarks the judge made while explaining the reasoning behind his verdict. "The alleged bias of the judge [which would warrant a recusal] must be of such a nature and intensity to prevent the defendant from obtaining a trial uninfluenced by the court's prejudgment." (Citation and punctuation omitted.) *Birt v. State*, 256 Ga. 483, 486 (4) (350 SE2d 241) (1986). In this case, the trial judge did what factfinders do in every case and applied his own life experiences and knowledge to the evidence at hand. Further, some of the statements that Larsen quotes in support of her argument that the judge was

biased addressed the reasoning behind his credibility findings, which again are the factfinder's province. Finally, the sentencing transcript reveals that the judge did not "ignore" the defense expert's testimony or the testimony of Larsen and her daughter; rather, he disbelieved them.

" '[M]ere dissatisfaction with the court's rulings' is not a legally sufficient ground for recusal," *Butler v. Biven Software*, 238 Ga. App. 525, 526 (1) (522 SE2d 1) (1999), or for a post-conviction claim of bias and partiality.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 6, 2001 —
RECONSIDERATION DENIED JANUARY 10, 2002 — 

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Barry E. Morgan, Solicitor-General, Thomas E. Griner, Assistant Solicitor-General*, for appellee.