Filed 4/17/14  In re A.D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | B249609 (Los Angeles County Super. Ct. No. CK96458) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LETICIA L. et al., <br><br> Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen Marpet, Commissioner Presiding.  Affirmed.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and William D. Thetford, Deputy County Counsel for Plaintiff and Appellant.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Respondent Leticia L.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Respondent Jesse L.

* * * * * * *

The Los Angeles County Department of Children and Family Services (Department) appeals from an order dismissing a petition filed in accordance with Welfare and Institutions Code section 300, subdivision (b)[1] after Jesse L. (Father) while driving under the influence of alcohol was involved in an automobile accident that injured his children. We affirm. Substantial evidence supported the juvenile court's determination that the children were not at a current risk of harm at the time of adjudication.

## FACTUAL AND PROCEDURAL BACKGROUND

Leticia L. (Mother) and Father are the married biological parents of Aliza born in 2005 and Ariel born in 2007; Father is the stepfather of Angel born to Mother in 2000. The family came to the Department's attention early in the morning of November 11, 2012 when Father was arrested for suspected driving under the influence and charged with violating Penal Code section 273A (child endangerment). Mother was later arrested and charged as well.

The family had attended a niece's Quinceanera on Saturday November 10, 2012. Mother and Father reported they drank approximately two to four four-ounce cups of beer around 5:00 p.m. and then ate a large meal at 8:00 p.m. The family left the party at about 12:30 a.m. and Mother believed Father was capable of driving. Father, a truck driver, had not slept for two days, and Mother and he believed he fell asleep at the wheel before he crashed into a parked car. After police arrived, the family was transported to the Los Angeles County/USC Medical Center Emergency Department.

Angel suffered a skull fracture and required emergency surgery to relieve the pressure on his brain caused by internal bleeding. He remained stable after surgery. Aliza and Ariel were also injured but released from the hospital within hours. Aliza stated she was wearing her seatbelt at the time of the accident. She sustained some bruising above her eyebrow, while Ariel sustained cuts on her lips that did not require stitches.

---

[1]     Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

Relatives who arrived at the hospital uniformly stated neither Mother nor Father was ever neglectful of or abusive toward the children.

On November 15, 2012, the Department filed a section 300 petition alleging pursuant to subdivision (b) that Mother and Father placed the children at risk when "father drove a vehicle while [he] was under the influence of alcohol while the children were passengers in the vehicle, resulting in a vehicle collision" and in injuries to the children (paragraph b-1), and that Father was a current abuser of alcohol, rendering him unable to provide regular care for and supervision of the children (paragraph b-2). The juvenile court found a prima facie case for detaining the children. Angel remained hospitalized and, shortly after the hearing, Aliza and Ariel were placed with relatives. The Department was directed to provide family reunification services to Mother and Father, including random drug testing.

On November 27, 2012, the Department submitted a copy of the police report as well as the results of Father's blood test after the accident showing a blood-alcohol level of .11. According to the police report, when officers arrived Mother was sitting on the curb with Aliza and Ariel, a third party was on the ground with Angel applying pressure to his head to try to stop the bleeding, and Father was leaning against a fence drinking from a bottle of water. Officers asked him to stop drinking and he complied; he picked up the bottle once again but complied when officers reiterated their request. Father initially stated that Mother was driving, but admitted he was the driver after officers advised him that his head injury was consistent with marks on the windshield. He stated he must have fallen asleep. Officers observed that Father exhibited symptoms consistent with alcohol intoxication—including bloodshot/watery eyes, slurred speech, an unsteady gait and an odor of alcohol—and Father admitted he had "'a lot to drink.'"

Mother stated that she and Father had about four beers each earlier in the evening. When asked why the two younger children were not in car seats, Mother first responded that she thought they were old enough to be out of them and later stated the seats were in her other car. Officers reported that Mother also exhibited symptoms consistent with alcohol intoxication. An officer who accompanied the family to the hospital heard

3

Mother yelling at Father, "Angel is having brain surgery because of you, I hate you, I hate you, I hate you!"

According to the Department's January 2013 jurisdiction/disposition report, on November 23, 2012, Angel had been transferred to Rancho Los Amigos for rehabilitation and was released to his biological father (A.D.) in December 2012. Due to the circumstances of the case, Father had lost his job, and Mother and he had since become homeless and were residing with various relatives. The Department interviewed all three children for the report. Angel blamed Mother and Father for the accident, stating that he saw Father drinking at the party, Father should not have driven, and he fell asleep and crashed. He was also angry at Mother for letting Father drive because she knew he had not slept. Angel stated he was not the same after the accident, noting that he had a scar and trouble balancing, and added that Father needed to "pay" for what he had done. Though Angel admitted taking off his own seatbelt because he wanted to sleep comfortably, he blamed his injuries on Father's conduct and not his lack of a seatbelt. He was content residing with A.D. Mother noted that A.D. had not been involved with Angel for the past three years, and she was concerned that he encouraged Angel to blame Mother and Father for his current circumstances.

Angel further stated that Father did not drink every day, explaining "he drinks mostly on the weekend or when we go[] to a party, but he has driven us around while he was buzzed. I know he is buzzed because I could smell the alcohol on his breath, and I could see he acts a little more relaxed. He doesn't get drunk he gets mostly buzzed. The difference between being buzzed and being drunk is that when you are buzzed you are drinking and you could still do things but you look a little more slow and relaxed and when you are drunk you have trouble walking and you talk funny or like doesn't make sense." He said Father is generally buzzed and not drunk when he drinks, and Mother is aware that he drives while he is "buzzed." He knew the brands of beer that Mother and Father preferred.

Aliza knew her parents were drinking beer at the Quinceanera and stated that the car crashed because Father fell asleep. She said the incident was scary, but they were all

4

"okay now." She said that sometimes her Father would drink beer and then drive, but not all the time. He drank beer primarily on the weekends, and she did not like it when he drank beer because it is not good for him. Ariel reiterated that Father fell asleep while driving. She added that Father drinks out of brown bottles even though she has told him not to drink because it is not good for him. She said Father did not drink every day, "'just sometimes.'" Aliza and Ariel wanted to reside with Mother and Father.

Father stated that he had been up since 10:30 a.m. on the Friday preceding the Saturday party, and that he made the mistake of drinking before driving. He did not feel as if he were unable to drive and would never have put his children in danger. He stated he drinks only during the weekends and at parties. Mother attributed the accident to Father's lack of sleep and denied that Father had any problem with alcohol.

Angel's coach and teacher stated that he had known the family for two years and characterized Mother and Father as involved and interested parents who were affectionate and patient with their children. He had no concerns about Father showing up intoxicated at a game and never observed anything to make him suspect Father had a drinking problem. He added that the community was divided after the accident: "'Those who know them [Mother and Father] well know that they would never put their children in harm's way and those who don't are spreading rumors and it's unfortunate.'" Both the maternal and paternal grandmothers said Mother and Father are good parents, and neither had concerns about Father's drinking. The paternal aunt who hosted the Quinceanera stated she intentionally served beer out of four-ounce cups to avoid guests drinking excessively. She saw Mother and Father eat a large meal and they did not appear drunk or unable to drive when they left around midnight. She said Mother and Father were "'great parents.'"

Mother had been visiting almost daily with Aliza and Ariel, and approximately three times per week with Angel, who sought less frequent visitation because his visits with Mother reminded him of the accident. Father had been unable to visit because of an order in his criminal case. Mother and Father submitted four blood tests in December 2012 that came back negative for both drugs and alcohol.

Though acknowledging the family's positive aspects, the Department was concerned about Father's blood-alcohol level on the night of the accident, the children's knowledge about Mother's and Father's' drinking and the parents' "permissive views" about drinking and driving. In a supplemental report submitted in March 2013, the Department reported that both Mother and Father were visiting all of the children regularly, though Angel continued to have mixed emotions about his visits with Mother. Mother and Father had been attending parenting classes and were scheduled to complete them on March 18, 2013. They had recently enrolled in individual counseling and Father was attending a substance abuse program. In addition, Mother and Father had submitted eight additional negative tests for drugs and alcohol. Several individuals also submitted letters on Father's behalf.

At the adjudication hearing, the juvenile court admitted the Department's reports into evidence and heard argument from counsel. The Department argued the section 300 petition should be sustained as pled, counsel for the children asked that only paragraph b-1 be sustained, and Mother's and Father's counsel requested that the petition be dismissed. Though acknowledging that a serious injury had occurred as a result of Father's driving while under the influence, the juvenile court found no evidence of a current risk of harm. It explained that the car accident "seems to be a single incident. And Father has been testing clean since this matter happened. Mother has been testing clean. And I don't see a current risk under the applicable cases that are before the court." Summarizing, the juvenile court stated: "[A]ll the evidence today points to a single horrible incident that caused serious, serious injuries, especially to one of his children but I see no current risk today." Consequently, the juvenile court dismissed the petition.

The Department appealed.

## DISCUSSION

The Department maintains the juvenile court should not have dismissed the petition because the undisputed evidence established the children were persons as described in section 300, subdivision (b). We disagree. Substantial evidence supported the order of dismissal.

6

**I.     Applicable Legal Principles and Standard of Review.**

The Department bears the burden of proving by a preponderance of evidence the juvenile court has jurisdiction. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) Section 300, subdivision (b) permits the juvenile court to adjudge a child a dependent of the juvenile court where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." A true finding under that subdivision requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "The third element . . . effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future." (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; accord, *In re J.O.* (2009) 178 Cal.App.4th 139, 152; *In re James R.* (2009) 176 Cal.App.4th 129, 137; *In re David M.* (2005) 134 Cal.App.4th 822, 829.) As summarized in *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023, "the consensus of the courts . . . has been that a court cannot exercise dependency jurisdiction under this subdivision where the evidence shows a lack of current risk. [Citations.]"

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re B.T.* (2011) 193 Cal.App.4th 685, 691; *In re David M., supra,* 134 Cal.App.4th at p. 828.) In determining whether there is substantial evidence, """we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We will uphold the juvenile court's finding if it is supported by substantial evidence, even if there is substantial evidence to support a contrary finding. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 230; accord, *In re Stephen W.* (1990) 221 Cal.App.3d 629, 644, fn. 12.) "The appellant has burden of

showing there is no evidence of a sufficiently substantial nature to support the findings or order. [Citation.]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1162.)

**II.    Substantial Evidence Supported the Juvenile Court's Dismissing the Section 300 Petition.**

In paragraph b-1, the section 300 petition alleged that Mother and Father placed the children in an endangering situation when, with the children as passengers, Father drove a vehicle while under the influence of alcohol and collided with a parked car, and further alleged that "[s]uch a detrimental and endangering situation established for the children by [mother and Father] endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger and death." Paragraph b-2 alleged that Father was an abuser of alcohol and that "[s]uch alcohol abuse by [Father], and [Mother's] failure to protect the children, endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger."

The juvenile court concluded that while the evidence showed a serious injury had occurred as a result of Father's driving under the influence, the evidence further demonstrated this was an isolated incident; therefore, the Department failed to meet its burden to show that incident placed the children at a current risk of harm. Substantial evidence supported the juvenile court's determination. As the court noted, the Department offered no evidence to show that Father had a history of driving under the influence and no evidence to show Father had previously been involved in any alcohol-related incidents. Moreover, Mother and Father had taken responsibility for their actions, with Father having enrolled in a substance abuse program and both having completed a parenting course and submitted multiple clean random drug and alcohol tests. In short, it found no evidence to support a finding that the children remained at risk at the time of the hearing.

As explained in *In re J.N., supra,* 181 Cal.App.4th at page 1022, "'[t]he basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' [Citation.]" (Accord, *In re Carlos T.* (2009) 174 Cal.App.4th 795, 803 ["dependency jurisdiction is not warranted under [section 300]

8

subdivision (b) if, at the time of the jurisdiction hearing, there no longer is a substantial risk that the child will suffer harm"].)  *In re J.N.* is particularly instructive, as the circumstances in that case which led to Department intervention mirror those presented here.  There, a father was driving his three young children when he struck another vehicle and then struck a light pole when trying to flee the scene.  When police arrived, the father admitted to drinking six beers, and he exhibited symptoms of being under the influence of alcohol; a blood test revealed he had a blood-alcohol level of .20.  The mother who was a passenger in the car likewise exhibited symptoms consistent with intoxication and had a blood-alcohol level of .11.  She was belligerent with police officers.  The children, one of whom was not wearing a seatbelt, suffered injuries and were later treated at a hospital.  (*In re J.N., supra,* at pp. 1015-1017.)

The father and mother were arrested, and the Department filed a petition under section 300, subdivision (b).  The mother later pleaded no contest to two misdemeanors and the father remained incarcerated.  They both acknowledged their mistake in drinking and driving.  The father later admitted to drinking nine beers before the accident.  The children stated that their parents drank once in awhile and they wanted to be reunited with them.  (*In re J.N., supra,* 181 Cal.App.4th at pp. 1017-1020.)  The juvenile court sustained the dependency petition finding that the severity of the single incident— including the level of the father's alcohol consumption and his poor judgment, coupled with the mother's failure to protect—was sufficient for it to find a current risk of harm. (*Id.* at p. 1021.)

The Court of Appeal reversed.  Finding that evidence of a current risk of serious physical harm is necessary to assume jurisdiction over a child, the court determined: "Despite the profound seriousness of the parents' endangering conduct on the one occasion in this case, there was no evidence from which to infer there is a substantial risk such behavior will recur." (*In re J.N., supra,* 181 Cal.App.4th at p. 1026.)  The court found no evidence to show that the father's or mother's past alcohol consumption was likely to lead to alcohol abuse in the future, and no evidence to show that either parent's general judgment or understanding of the risks of alcohol was so deficient so as to place

9

the children at risk.  (*Ibid*.)  To the contrary, "[t]he evidence consistently indicated that the children were healthy, well adjusted, well cared for, bonded with each other, and developing appropriately.  While it is a valid concern that the TSR [treatment status report] evaluator in this case thought mother seemed to minimize her and her husband's alcohol use and the ramifications of alcohol use, by the time of the jurisdiction/disposition hearing, the criminal court had ordered mother to complete substance abuse and parenting programs and placed her under probation supervision.  Significantly, both parents were remorseful, loving, and indicated that they were willing to learn from their mistakes."  (*Ibid.*)

The evidence here was no different.  Father drove a vehicle while under the influence of alcohol and his collision with another vehicle resulted in injuries to his and Mother's three children.  Though Mother and Father initially tried to minimize and even conceal the nature of their conduct, they later expressed remorse about their actions and took steps to insure there was no recurrence—including participating in parenting classes, substance abuse classes, counseling and random drug and alcohol testing.  There was no evidence to show that Mother's or Father's alcohol consumption had ever previously endangered the children or resulted in law enforcement intervention.  The undisputed evidence showed that the children were well-cared for and that others who knew the family uniformly reported that the parents were caring and loving, and actively involved in their children's lives.  Even the Department's services worker opined "the parents are good and caring parents who made a bad choice and . . . the children should reunify with the parents as soon as possible."

We find no merit to the Department's argument that these circumstances are instead governed by *In re J.K.* (2009) 174 Cal.App.4th 1426, a case expressly distinguished in *In re J.N., supra,* 181 Cal.App.4th at pages 1023-1024.  In *In re J.K.*, the appellate court affirmed a jurisdictional finding on the basis of evidence that a few years earlier the father had raped the child and struck her so hard that he dislocated her

shoulder, and that the mother had continued to permit the child to visit the father after learning about the incidents. (*In re J.K., supra,* 174 Cal.App.4th at pp. 1429-1430.) The court rejected the father's argument that the jurisdictional findings should be reversed because there was no evidence of a current risk of harm, finding both that section 300 did not require a finding of current risk where serious physical injuries had occurred and that the evidence established a current risk. (*Id.* at pp. 1434-1440.) In connection with its interpretation of the statute, the court concluded "that a showing of prior physical or sexual abuse is sufficient to support the initial exercise of jurisdiction under section 300, subdivisions (a), (b) and (d) . . . ." (*In re J.K., supra,* at p. 1439.) With respect to the child's current and future risk of harm, the court observed that the father continued to minimize the severity of his abuse and neither he nor mother had taken any steps to address their prior behavior. (*Id*. at pp. 1439-1440.) Thus, the evidence supported the conclusion that the child remained at risk of harm. (*Id*. at p. 1440.) *In re J.K.* has no application here, both because there was no showing that Mother or Father committed a prior act of sexual or physical abuse and because the evidence showed that both parents had taken affirmative steps to demonstrate that a similar incident would not recur.

We likewise reject the Department's alternative argument that the evidence offered here is more egregious than that in *In re J.N., supra*, 181 Cal.App.4th 1010. In that case, the court outlined the factors that a court should consider in determining whether a prior harmful incident may be sufficient to demonstrate a current risk: "In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a

11

parent avoid a recurrence of such an incident. The nature and circumstances of a single incident of harmful or potentially harmful conduct may be sufficient, in a particular case, to establish current risk depending upon present circumstances." (*Id*. at pp. 1025-1026.)

The Department maintains that an application of those factors established a current risk; it points to evidence not present in *In re J.N.*, including that the parents initially lied about who was driving and how much alcohol they had consumed on the night of the accident, the children stated Father drank beer every weekend, Angel discussed in great detail the difference between being "buzzed" versus being "drunk," and A.D. described a Halloween party incident where the parents drank and were involved in a fight. Construing the evidence in the light most favorable to the juvenile court's findings (see, e.g., *In re Michael G.* (1993) 19 Cal.App.4th 1674, 1676), we find no basis to disturb the order of dismissal. Though Mother and Father initially failed to acknowledge their behavior at the scene of the accident, they both later admitted their poor judgment and took steps to remedy any future risk. While there was evidence that Father drank beer, the Department bore the burden "to present evidence of a specific, non-speculative and substantial risk to [the children] of serious physical harm" from his beer drinking. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003.) As the juvenile court stated, the Department offered no evidence to show the parents had been involved in any prior or subsequent alcohol-related incidents. Further, the Department offered no evidence to show how Angel obtained his knowledge about being buzzed versus being drunk, and specifically no evidence that he learned the distinction from his parents. Finally, the Department offered no time frame for the Halloween party described by A.D. and no evidence to show from whom he "heard" Mother and Father were "wasted."

Because the Department failed to meet its burden to establish the children remained at a substantial risk of serious physical harm at the time of the jurisdictional hearing, substantial evidence supported the juvenile court's dismissal of the dependency petition.

12

## DISPOSITION

The order dismissing the section 300 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.