**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 18, 2023

S23Y0155. IN THE MATTER OF ASHUTOSH S. JOSHI.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Patrick Longan, who recommends that we accept the amended petition for voluntary discipline submitted by respondent Ashutosh S. Joshi (State Bar No. 405375) after the filing of a formal complaint. See Bar Rule 4-227 (c). Joshi seeks the imposition of a six-month suspension, nunc pro tunc to November 30, 2021, for his admitted violation of Rule 4.2 (a) (providing that a lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order), the maximum sanction

for a single violation of which is disbarment. However, Joshi's petition does not admit to — or even meaningfully address — the conduct alleged in the formal complaint, which appears to be substantially more serious than the conduct to which Joshi does admit. And although the Bar and the special master recommend acceptance of Joshi's petition, neither the Bar nor the special master gives any indication that they have concluded that the conduct charged in the formal complaint did not occur. Accordingly, we reject Joshi's petition and remand this matter with direction to resolve whether these more serious matters — as well as an additional matter gleaned from our review of the record — in fact occurred.

The formal complaint stated that Joshi, who has been a member of the Bar since 1996, represented a client accused of murder and other offenses. The case against the client, Kenneth Jackson, who was allegedly the highest-ranking member of a gang in Georgia, involved a shooting in which several women were injured and an infant was killed. A co-conspirator pled guilty and agreed to testify against Jackson. After the co-conspirator, who was

represented by attorney Brad Gardner, agreed to cooperate against Jackson, he was moved away from Jackson and their placement at the Georgia Diagnostic and Classification Prison to the Rockdale County jail. The co-conspirator's location was kept confidential out of concern for his safety.

The formal complaint goes on to allege that, prior to the trial, the Assistant District Attorney filed a witness list showing the co-conspirator as a witness and Gardner as his attorney. She served that list on Joshi by email on August 28, 2017. Later that same day, Joshi traveled to the Diagnostic and Classification Prison and met with Jackson. Joshi then traveled to the Rockdale County Jail. Joshi had never represented the co-conspirator, and he allegedly knew that the co-conspirator was represented by Gardner. Joshi did not attempt to secure Gardner's permission to meet with the co-conspirator.

Upon arriving at the Rockdale County Jail, Joshi approached the visitor registration desk and notified the intake deputy that he was there to meet with the co-conspirator — whom he allegedly

identified as his client. The intake deputy reviewed the jail database and noticed that, although it showed prior attorney visits for the co-conspirator, Joshi had never visited him. After clarifying that Joshi was, in fact, there to visit his "client," the intake deputy notified the supervisor for the co-conspirator's housing pod that the co-conspirator had an attorney visitor. But when the intake deputy notified Joshi that there would be a short delay so that the pod could be cleared, Joshi, unlike prior attorney-visitors, requested to have the visit occur in the attorney visitation booth, which permitted confidential conversation. Once the co-conspirator had been moved to the attorney visitation booth, another officer escorted Joshi there.

Very shortly after Joshi entered the booth, the intake deputy heard the co-conspirator pounding on the booth window, asking to be removed because Joshi was not his attorney. After the co-conspirator was removed and Joshi had exited the booth, officers observed that the co-conspirator was extremely agitated and visibly upset, stating that Joshi was Jackson's attorney. After Joshi left the facility, he emailed Gardner to inform him of his visit with the co-

4

conspirator, and Gardner told Joshi not to visit the co-conspirator again. Joshi thereafter sent correspondence to the co-conspirator and Gardner reviewing the substance of his meeting with the co-conspirator.

The formal complaint charged Joshi with having violated Rules 4.1 (a) (providing that, in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person) and 8.4 (a) (4) (providing that a lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation) for having knowingly misrepresented to staff at the Rockdale County Jail that he was the co-conspirator's attorney. The maximum sanction for a single violation of either of those Rules is disbarment. The complaint also charged Joshi with a violation of Rule 4.2 (a) for having met with the co-conspirator while knowing that the co-conspirator was represented, without permission from the co-conspirator's counsel.

Joshi filed an initial and amended answer to the complaint, the parties engaged in discovery, and numerous depositions were taken.

Joshi also filed a motion for summary judgment, arguing, in essence, that he did not possess actual knowledge of the fact that the co-conspirator was represented by Gardner prior to meeting with him and did not misrepresent to personnel at the Rockdale County Jail that he was the co-conspirator's attorney, such that he had not committed any of the charged Rules' violations.

On November 12, 2021, a hearing was held on Joshi's motion for summary judgment, and the special master entered an order denying that motion on November 17, 2021. The special master first considered the alleged Rule 4.2 (a) violation, noting that the only issue controlling whether there had been a violation was whether Joshi knew at the time at which he met with the co-conspirator that he was represented. The special master pointed to Rule 1.0 (m), which provides that, where a rule requires knowledge on the part of the disciplinary respondent, it must be actual knowledge, but that the respondent's knowledge may be inferred from the circumstances. The special master stated that there were circumstances in the record from which an inference could be drawn that Joshi knew that

6

the co-conspirator was represented in advance of their meeting, which created a genuine issue of material fact.

Turning to the alleged violations of Rules 4.1 (a) and 8.4 (a) (4), the special master acknowledged that Joshi denied making any false statement of fact or engaging in any dishonesty, deceit, or misrepresentation in connection with his visit to the jail, but noted that a member of the jail staff had testified that Joshi had falsely told her that he represented the co-conspirator. The special master concluded that, although Joshi had argued that this testimony was not reliable, issues of reliability and credibility could not be resolved on a motion for summary judgment.

On December 1, 2021, the special master entered an order stating that he had been informed by counsel for Joshi and the Bar that the parties were "working together on the terms of a Petition for Voluntary Discipline" that Joshi intended to submit. Joshi then filed such a petition, but made no attempt to address directly the alleged Rules' violations charged by the Bar's formal complaint. Instead he highlighted that he did not enter an appearance on

7

Jackson's behalf until 15 months after the co-conspirator had pled guilty, and that his paralegal's research indicated that the co-conspirator's case was closed, assertions which appear to have been calculated to imply that Joshi would have had no reason to suspect that the co-conspirator was represented at the time of their meeting. Joshi also did not attempt to address directly the testimony on which the Bar's charged Rules violations were based — instead, for instance, condensing his account of his interactions with the intake deputy to having notified her "that he was an attorney and was there to visit [the co-conspirator]." Joshi did, however, admit to a single violation of Rule 4.2 (a) for having sent to the co-conspirator the post-meeting correspondence reviewing the substance of his meeting with the co-conspirator. For this single Rule 4.2 violation, Joshi sought a three-month suspension, nunc pro tunc to the November 30, 2021 date on which he ceased practicing law.[1]

---

[1] It is not altogether clear from the record whether Joshi merely ceased practicing law in anticipation of discipline being imposed on this matter, or if he intends to cease practicing law altogether. For example, in his recitation of alleged mitigating factors, Joshi stated that "[i]n the event Mr. Joshi decides

The Bar filed a response to Joshi's petition, recommending that it be accepted. The Bar also did not address directly the matters at issue in the formal complaint, although it made statements that appear to imply that it continued to believe that those violations had occurred. For example, the Bar's response described at length the circumstances of Gardner's continued representation of the co-conspirator; reciting that, several weeks before Joshi's meeting with the co-conspirator, the DA's office had served "discovery to all attorneys of record that included a lengthy recording of [the co-conspirator's] interview that implicated Defendant Jackson in the murder and other crimes, the plea agreement and requirement for truthful testimony" and that "listed Mr. Gardner's office address as the address for [the co-conspirator] on discovery for all attorneys of record."

to practice law again, he will ensure that he does not reach out to anyone who he learns to be represented by counsel without prior permission of counsel for the represented individual." Joshi's attached affidavit of law practice closure provided no additional insight; the Bar's website indicates only that Joshi is currently ineligible to practice because of unpaid license fees.

The special master then entered an order denying Joshi's initial petition. The special master briefly recited the allegations of the formal complaint and noted that the petition did not admit to those violations and instead admitted to a violation not identified in the formal complaint. Nevertheless, the order stated that "[t]he Petition for Voluntary Discipline complies with Rule 4-227 (a)[2] in that it admits conduct that is sufficient to authorize the imposition of discipline." The order proceeded to analyze whether the petition sought *appropriate* discipline, concluding that it did not, because (in the special master's view) any discipline less than a six-month suspension would not be appropriate.

Joshi next submitted an amended petition, essentially the same except for changing the requested nunc pro tunc suspension to six months. The Bar again recommended acceptance of the petition. In its response, the Bar asserted that, although Joshi's initial and amended petitions did not admit to the violations alleged in the

---

[2] Rule 4-227 (a) provides that "[a] Petition for Voluntary Discipline shall contain admissions of fact and admissions of conduct in violation of Part IV, Chapter 1 of these Rules sufficient to authorize the imposition of discipline."

formal complaint, Rule 4-227 (a) did not require him to do so, and that the admissions of his petition were sufficient to authorize the imposition of discipline.

The special master recommended acceptance of the amended petition. First, regarding the alleged violations of Rules 4.1 (a) and 8.4 (a) (4), the special master noted that, although Joshi testified that he did not represent himself to Rockdale County Jail personnel as the co-conspirator's attorney, there was evidence to the contrary. The intake deputy, for example, testified that Joshi twice identified himself as the co-conspirator's attorney. And another member of the jail staff testified that, at the time of Joshi's visit, there was a policy in place at the jail that restricted visits by attorneys such that inmates could *only* be visited by attorneys who represented the inmate or sought to represent the inmate — suggesting Joshi would have had to hold himself out as the co-conspirator's attorney to visit him. The special master did not resolve this factual dispute. Second, and as to the Rule 4.2 (a) violation alleged in the formal complaint (as opposed to the separate Rule 4.2 (a) violation to which Joshi

11

admitted), the special master stated that "there were circumstances in the record from which a factfinder might infer that Mr. Joshi knew that [the co-conspirator] was represented at the time of their meeting." The special master acknowledged that the prosecutor in Joshi's client's case testified that: (1) she made discovery materials available to Joshi on August 7, 2017, three weeks before the meeting at the Rockdale County Jail; (2) that these materials revealed that the co-conspirator was a cooperating witness; and (3) that, in her ordinary practice, she would have mailed the discovery materials to Joshi if Joshi did not pick them up. The special master further noted that Joshi had conceded that if he had known that the co-conspirator was a cooperating witness, he would have had reason to know that the co-conspirator was represented by counsel. But the special master acknowledged that Joshi denied knowing that the co-conspirator was a cooperating witness before August 28, 2017 and stated that there was no documentation in the record to show that Joshi received the discovery materials mentioned in the August 7 email or that they were mailed to him.

Despite the Bar and the special master's recommendation to accept Joshi's petition for voluntary discipline — which, as discussed below, we find puzzling — it is clear that the petition is due to be rejected. The violations alleged in the formal complaint are substantially more serious than the single, comparatively trivial violation to which Joshi has admitted. Joshi is accused of knowingly communicating directly with a represented co-conspirator and lying to jail staff to make that happen — and yet the only thing he admits is that he should not have, after the underlying events occurred (which, in his telling, did not involve either of the wrongs alleged), sent a letter to the co-conspirator memorializing the contents of their conversation. And nothing before us gives any indication that either the Bar or the special master has concluded that those more serious violations did not occur.

The record contains additional evidence that heightens our concerns. During an interview with the District Attorney's office following the meeting with Joshi, the co-conspirator repeatedly asserted that, after Joshi had identified himself to the co-

13

conspirator as Jackson's attorney, Joshi had told the co-conspirator "let me help you, you need my help," and the co-conspirator had told Joshi that there was nothing he could do for him. According to the co-conspirator, Joshi got angry, asked the co-conspirator when he was being moved back to his prior facility, and made a threatening gesture at the co-conspirator — which the co-conspirator interpreted as conveying a threat to his life. Given that the co-conspirator had been moved to the Rockdale County Jail *because* of concerns over his safety with regard to the potential for retribution from Joshi's client and his gang associates, this testimony is profoundly troubling. If such conduct occurred as the co-conspirator alleged, it would appear not only to provide a basis for additional, substantial discipline under the Rules of Professional Conduct, but also to raise a question about whether criminal witness intimidation occurred.

Given all of this, we find it difficult to know what to make of the Bar and the special master recommending that we accept Joshi's petition for voluntary discipline. Some of the comments made by the Bar and the special master, particularly those regarding Joshi's

14

compliance with Rule 4-227 (a), appear to reflect a belief that that they had no choice but to accept Joshi's petition, since it adequately acknowledged conduct on the basis of which discipline could be imposed. We are not aware, however, of any authority compelling the acceptance of a petition admitting to substantially less serious conduct than that charged in a related formal complaint — a notion that would significantly undermine the disciplinary process — and the Rules do not appear to support such a construction. See generally Rule 4-227 (c) (3) (providing that, where a petition for voluntary discipline has been filed subsequent to the filing of a formal complaint, that petition may be rejected by a special master "for such cause or causes as seem appropriate to the Special Master," which "may include but are not limited to" the specific findings noted in (c) (3) (i – iv)). Alternatively, it may be that the Bar felt it was unnecessary to fully resolve the issues from the formal complaint for some other reason, like the possibility that Joshi did not intend to resume the practice of law. See n.1, *supra.* If so, then the Bar should explain so and explain why we can be confident that Joshi will not

15

change his mind at some point in the future. For the moment, though, there does not appear to be anything in the record precluding Joshi from resuming the practice of law. Indeed, given his request to have the proposed six-month suspension imposed nunc pro tunc to November 30, 2021, and the lack of conditions proposed as to his reinstatement, Joshi could resume practicing law immediately after the issuance of an opinion imposing the requested suspension.

Accordingly, given that this matter, as currently presented to us, fails to resolve the questions of whether the serious allegations presented in the formal complaint occurred as alleged and whether Joshi threatened his client's co-conspirator, Joshi's petition for voluntary discipline is rejected.[3]  Although we express no view at

---

[3] Our concerns regarding this matter are heightened in the light of the fact that Joshi has been sanctioned at least once before. In 2009, this Court accepted Joshi's petition for voluntary discipline and imposed a public reprimand for his admitted violation of Rule 1.11 (providing that a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government entity consents after consultation). See *In the Matter of Joshi*, Case No. S09Y0429 (Feb. 23, 2009). Specifically, in that matter, Joshi admitted that, shortly after representing the State in its criminal

this stage regarding the merits of these unresolved questions, this matter is remanded with direction that "[a]ny future attempts to resolve [Joshi's] disciplinary matter should address this additional conduct and the question of whether it provides any basis for discipline, and, if so, at what level of sanction." See *In the Matter of Hine*, 314 Ga. 70, 76 (875 SE2d 716) (2022).

*Petition for voluntary discipline rejected. All the Justices concur, except LaGrua, J., disqualified.*

---

prosecution of a defendant, he spoke with the defendant's family about representing the defendant on appeal and that during those discussions he stated that certain witnesses at the defendant's trial had testified falsely.