NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: November 7, 2023

S23Y1160. IN THE MATTER OF W. McCALL CALHOUN, JR.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation, issued after a show cause hearing pursuant to Rule 4-106 of the Georgia Rules of Professional Conduct (the "Rules"), of Special Master LaRae Dixon Moore, who recommends that W. McCall Calhoun, Jr. (State Bar No. 103915), a member of the State Bar of Georgia since 1990, be suspended from the practice of law pending the outcome of the appeal of his federal court felony and misdemeanor judgments of guilt related to his participation in the events of January 6, 2021 at the United States Capitol. The Special Master's recommendation is based on her finding that Calhoun violated Rules 8.4 (a) (2) and (3) found in Bar Rule 4-102

(d).  The maximum penalty for violating Rules 8.4 (a) (2) and (3) is disbarment.

Calhoun filed exceptions to the Special Master's report and recommendation, and the State Bar responded.  Having now undertaken our own review of the record, we agree that suspension from the practice of law pending the outcome of Calhoun's appeal is appropriate.

1. *The Facts.*

In her report, the Special Master laid out the underlying facts as follows.  On March 20, 2023, in connection with the January 6, 2021 "breach and siege of the U.S. Capitol" following the 2020 Presidential Election, Calhoun, following a bench trial, was found guilty of the following criminal offenses: (1) 18 USC § 1512 (c) (2) and 18 USC § 2, obstruction of an official proceeding before Congress, a felony[1]; (2) 18 USC § 1752 (a) (1), entering and

---

[1] We note that the district court's order finding Calhoun guilty, which is included in the record, specifically found him guilty of "corruptly obstructing . . . an official proceeding . . . , specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment to the Constitution . . . ."

remaining in a restricted building or grounds, a misdemeanor; (3) 18 USC § 1752 (a) (2), disorderly and disruptive conduct in a restricted building or grounds, a misdemeanor; (4) 40 USC § 5104 (e) (2) (D), disorderly conduct in a Capitol building, a misdemeanor; and (5) 40 USC § 5104 (e) (2) (G), parading, demonstrating, or picketing in a Capitol building, a misdemeanor. Calhoun had not been sentenced at the time the Special Master issued her report.

Additionally, we note that Calhoun testified at the show cause hearing[2] that: (1) he was present at the United States Capitol on January 6; (2) he went into the Capitol building; (3) he understood that he could be "charged with some type of trespass," but he engaged in the conduct because "civil rights [were] at stake," and he believed he was exercising peacefully his First Amendment rights, and therefore he would "take a misdemeanor for the cause"; (4) he

---

[2] At the hearing, Calhoun argued that: (1) the State Bar has no evidence that he has been "convicted" of a crime; (2) he cannot be disciplined for committing a felony based on conduct that amounts to only a misdemeanor under Georgia law; (3) the safe-harbor in Comment [5] to Rule 8.4 applies and prevents discipline pursuant to Rule 8.4; and (4) application of Rule 8.4 (a) (2) to suspend his law license would violate his due process rights and deprive his clients of the lawyer of their choice.

3

did not break anything, open any doors that were not open, or engage in violence; and (5) when asked if he had remorse for his conduct, he responded "[w]hy would I have remorse?"

2. *Disciplinary Analysis by Special Master.*

The Special Master recounted the relevant Rules as follows. It is a violation of Rule 8.4 (a) (2) for a lawyer to "be convicted of a felony." It is a violation of Rule 8.4 (a) (3) for a lawyer to "be convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law." Rule 8.4 (b) (1) provides that, for purposes of Rule 8.4, "conviction" shall have the meaning set forth in Rule 1.0 (e), and Rule 8.4 (b) (2) provides that the record of a conviction or disposition in any jurisdiction based upon a guilty plea, a plea of nolo contendere, a verdict of guilty, a verdict of guilty but mentally ill, or imposition of first offender probation shall be conclusive evidence of such conviction or disposition and shall be admissible in proceedings under the Rules. Rule 1.0 (e) provides that "conviction" or "convicted" denotes any of the following accepted by a court, whether

or not a sentence has been imposed: "(1) a guilty plea; (2) a plea of nolo contendere; (3) a verdict of guilty; (4) a verdict of guilty but mentally ill; or (5) a plea entered under the Georgia First Offender Act, OCGA § 42-8-60 et seq., or a substantially similar statute in Georgia or another jurisdiction."

The Special Master then considered and rejected three specific arguments raised by Calhoun. As to Calhoun's argument that suspending him now would deprive his current clients of their choice of counsel, the special master stated that "[t]he right to counsel does not mean the right to the counsel of one's own choosing in every situation." *In the Matter of Stoner*, 246 Ga. 581, 582 (272 SE2d 313) (1980).

Next, the Special Master addressed Calhoun's argument that there is no evidence that he violated Rule 8.4 because, under the language of Rule 1.0 (e), the only definition of "conviction" that could apply to him is a "verdict of guilty," and verdicts are rendered by a jury, whereas Calhoun was found guilty by the court following a bench trial. The Special Master found this argument unavailing for

two reasons: (1) the definition found in Rule 1.0 (e) is not exclusive, as it illustrates dispositions that fall within the definition of "conviction" but leaves the definition open to dispositions that are not mentioned; and (2) Calhoun's reading of the Rule is inconsistent with the history and purpose of the Rule because, by Calhoun's logic, a lawyer accused of a crime could avoid disciplinary consequences simply by asking for a bench trial instead of a trial by jury.

Finally, the Special Master responded to Calhoun's argument that his conduct would not have been a felony if it had been committed in Georgia—see OCGA § 16-11-34.1, titled "Disruption of the Senate or House of Representatives" and the violation of which is a misdemeanor—meaning only Rule 8.4 (a) (3) applies and the State Bar must prove that his underlying conduct involved both moral turpitude and was related to the practice of law. In response, the Special Master stated that whether the conduct for which Calhoun was convicted would have been a misdemeanor had he committed it in Georgia was irrelevant to the matter at hand, citing Rule 4-106 (g) ("[A] certified copy of a conviction in any jurisdiction

shall be prima facie evidence of a violation of Rule 8.4 . . . .").

According to the Special Master, the Rules are clear that all that is required for a violation of 8.4 (a) (2) is a felony conviction, regardless of where it was obtained; the offense need not involve moral turpitude or reflect on the lawyer's fitness to practice.[3]

Thus, the Special Master found that Calhoun had been convicted of a felony and several misdemeanors in violation of Rules 8.4 (a) (2) and (3).  Accordingly, the Special Master recommended that Calhoun be suspended from the practice of law pending the outcome of the appeal of his convictions.

3. *Calhoun's Exceptions Before this Court.*

Calhoun filed exceptions to the Special Master's report and recommendation, asserting four main arguments.  First, Calhoun argues that the Special Master's conclusion that he violated Rules 8.4 (a) (2) and (3) was error.  Calhoun argues that the judgment finding him guilty of certain crimes does not constitute a "conviction"

---

[3] The Special Master did not address Calhoun's argument regarding Comment [5] to Rule 8.4.

7

for purposes of the Rules because it was the result of a bench trial, not a jury trial. Calhoun argues that the definition of "conviction" and "convicted" in Rule 1.0 (e) defines those terms only as including pleas and verdicts, and here, there was no plea and no verdict. In support of this proposition, Calhoun cites *Woodham v. State*, 253 Ga. App. 112, 113 (558 SE2d 454) (2001) ("[T]he trial court could not have directed a verdict of acquittal because there is no verdict in a bench trial. Therefore, even if a motion for a directed verdict was made, such a motion has no meaning when a case is tried without a jury."). Calhoun also asserts that there is no support for the Special Master's conclusion that the list under Rule 1.0 (e) is non-exhaustive. Calhoun concludes that a judgment of guilty entered after a bench trial, having not been included in Rule 1.0 (e)'s list of final dispositions constituting "convictions," is excluded from the definition and cannot form the basis for a violation of Rules 8.4 (a) (2) or (3).

Calhoun argues that the Special Master's finding that he is in violation of Rule 8.4 (a) (3) is wrong because the Special Master did

not analyze whether his misdemeanors involved "moral turpitude" or underlying conduct related to his fitness to practice law. Rule 8.4 (a) (3).

Next, Calhoun argues that he cannot be disciplined for committing a felony based on conduct that amounts to only a misdemeanor under Georgia law. See OCGA § 16-11-34.1 (a), (h) (1) (providing that "[i]t shall be unlawful for any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives" and that the first violation of the statute is a misdemeanor). Calhoun contends that nothing in the law of the jurisdiction where a conviction is had should control over the laws of Georgia, and thus the Special Master erred in determining that he can be disciplined under Rule 8.4 (a) (2) for a crime that is punishable in Georgia only as a misdemeanor.

Next, Calhoun argues that the Special Master ignored Comment [5] to Rule 8.4. Comment [5] to Rule 8.4 provides that "[a] lawyer may refuse to comply with an obligation imposed by law upon

9

a good faith belief that no valid obligation exists. The provisions of Rule 1.2 (d) concerning a good faith challenge to the validity, scope, meaning or application of the law apply to challenges of a legal regulation of the practice of law." Calhoun argues that, to the extent he committed a trespass in entering the Capitol, his actions were nonetheless protected as peaceful political protest in good faith and in defense of civil rights. Calhoun states that his good faith belief meets the subjective standard under Comment [5].

Finally, Calhoun argues that the imposition of the Special Master's recommended suspension would be an unreasonable restriction on his right to practice his chosen profession and would violate his due process rights. Calhoun asserts that a felony conviction on its own is not evidence that his continued practice of law would be a danger to the public or to the courts, and there is no rational basis to treat felonies, especially when defined by another jurisdiction, any different than misdemeanors, which do not warrant discipline unless the circumstances suggest the attorney is, in fact, unfit to practice. Calhoun states that his interest in pursuing his

10

livelihood, and his clients' right to counsel of their choice, should outweigh the State Bar's interest in ensuring the public holds lawyers in high esteem. Calhoun concludes that imposing the recommended discipline without an inquiry into the nature or circumstances of the conduct underlying Calhoun's alleged crimes violates his constitutional rights.

4. *The State Bar's Response to Calhoun's Exceptions.*

In response to Calhoun's argument that the Special Master's conclusion that Calhoun violated Rules 8.4 (a) (2) and (3) was error, the State Bar contends that it is not aware of any instance in which this Court has allowed a convicted felon to continue practicing law while pursuing appeals. The State Bar asserts that, although "verdict" is commonly used in reference to a jury's fact-finding, there is no reason judicial fact-finding cannot be called a "verdict." The State Bar points out that the docket for Calhoun's criminal case on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database references a "verdict," and so does his own notice of appeal in his criminal case. Next, the State Bar asserts

that, although it believes Calhoun's misdemeanor convictions involve moral turpitude, it is unnecessary to reach that conclusion currently, because Calhoun's felony conviction is sufficient to justify his suspension pending termination of his appeals.

Next, the State Bar contends that Calhoun's argument that had he disrupted the Georgia Senate or House of Representatives, he would have been convicted only of a misdemeanor, is unavailing because that is not what he actually did. Thus, the State Bar argues, the statute Calhoun references is irrelevant here.

Next, with regard to Calhoun's argument that he cannot be disciplined for his conduct on January 6 under Rule 8.4 because of Comment [5] to that Rule, the State Bar asserts that Calhoun ignores the second sentence in the Comment. The State Bar argues that that language refers to a lawyer's right as described in Rule 1.2 (d) to assist a client in making a good faith effort to determine the validity or scope of the law, but the Comment does not exonerate a lawyer convicted of a felony simply because he believes he was not acting illegally.

12

Finally, with regard to Calhoun's argument that suspending him would violate his due process rights and the constitutional rights of his clients, the State Bar argues that the Court has already addressed this situation in *Stoner* in a manner adverse to Calhoun's argument. *Stoner*, 246 Ga. at 582 (rejecting argument that suspension of lawyer's law license before his appeals were final violated his due process rights).

The State Bar concludes by stating that Calhoun should be suspended pending the termination of his appeal.[4]

5. *Analysis.*

(a) *Whether Calhoun Violated Rules 8.4 (a) (2) and (3).*

Calhoun's argument that he cannot be disciplined under Rules 8.4 (a) (2) or (3) because he was not "convicted" is unavailing. It is a violation of Rule 8.4 (a) (2) for a lawyer to "be convicted of a felony." It is a violation of Rule 8.4 (a) (3) for a lawyer to "be convicted of a

---

[4] The State Bar noted that Calhoun had not been sentenced at the time of the Special Master's report, and has since been sentenced to eighteen months of incarceration, twenty-four months of supervised release, $2,000 in restitution, and $170 as a special assessment.

misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law." Rule 8.4 (b) (1) provides that, for purposes of Rule 8.4, "conviction" shall have the meaning set forth in Rule 1.0 (e). The term "conviction" or "convicted" is defined in Rule 1.0 (e) solely in terms of pleas and "verdict[s]." The term at issue here is "verdict."

We construe the Rules "according to the principles that we ordinarily apply in the interpretation of legal text." *Matter of Mignott*, __ Ga. __ (__ SE2d __) (2023 Ga. LEXIS 229, 2023 WL 6976464) (Case No. S23Y0974, decided Oct. 24, 2023) (internal quotation marks and citation omitted). According to those principles, "we must afford the [ ] text its plain and ordinary meaning, we must view the [ ] text in the context in which it appears, and we must read the [ ] text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-73 (751 SE2d 337) (2013) (cleaned up). The Rules provide no textual definition of "verdict," nor do they provide any exclusions as to what is considered a "verdict."

14

Calhoun cites to the Court of Appeals' decision in *Woodham* for the proposition that "verdict" only encompasses judgments of guilt rendered by a jury and not by a judge in a bench trial. However, the issue in *Woodham*, and in other cases announcing the same rule, was whether the trial court erred in failing to direct a verdict after a bench trial. See *Brown v. State*, 298 Ga. App. 545, 545 (680 SE2d 579) (2009); *Sistrunk v. State*, 287 Ga. App. 39, 39 (651 SE2d 350) (2007); *Drake v. Wallace*, 259 Ga. App. 111, 112 (576 SE2d 87) (2003); *Fluellen v. State*, 264 Ga. App. 19, 22 (589 SE2d 847) (2003); *Poole v. State*, 249 Ga. App. 409, 410 (548 SE2d 113) (2001); *Goodson v. State*, 242 Ga. App. 167, 167-68 (529 SE2d 175) (2000); *Jones v. State*, 226 Ga. App. 608, 608 (487 SE2d 89) (1997); *Adkins v. State*, 221 Ga. App. 460, 460 (471 SE2d 896) (1996); *Blair v. State*, 216 Ga. App. 545, 546 (455 SE2d 97) (1995); *In Int. of L.D.H.*, 213 Ga. App. 297, 298 (444 SE2d 387) (1994); *Daniels v. State*, 211 Ga. App. 23, 25 (438 SE2d 99) (1993), reversed on other grounds, 264 Ga. 460 (448 SE2d 185) (1994); *Lee v. State*, 201 Ga. App. 827, 828 (412 SE2d 563) (1991) (citing *Kennery v. Mosteller*, 133 Ga. App. 879, 880 (212

15

SE2d 447) (1975) for the proposition that "[t]here is no verdict in a bench trial"[5]). In this line of cases, the Court of Appeals decided that a motion for directed verdict stands to be denied in a bench trial because there is no "verdict" in a bench trial.[6] However, the true reason a judge cannot direct a verdict in a bench trial is not because there can be no verdict in a bench trial, but because a directed verdict asks the court to take the decision away from the jury, see *Serv. Merch., Inc. v. Jackson*, 221 Ga. App. 897, 898 (1996) (by granting directed verdict, "the case is taken away from the jury, and the court substitutes its own judgment for the combined judgment of the jury"), and in a bench trial there is no jury from which to take

---

[5] It appears that the rule articulated by the Court of Appeals originates from *Kennery*'s uncontroversial statement that "[i]n a non-jury case, it is procedurally incorrect to move for a directed verdict." *Kennery*, 133 Ga. App. at 880.

[6] Other cases where the Court of Appeals has reiterated the rule are without analysis of the rule and/or are derived from the directed verdict cases. See *Kea v. State*, 344 Ga. App. 251, 253 (810 SE2d 152) (2018) (citing *Woodham* and stating "there is no verdict in a bench trial" but that a motion for new trial raising general grounds is a proper means of seeking retrial in the trial court of that same court's decision on an issue of fact); *Smith v. State*, 350 Ga. App. 336, 337 (829 SE2d 408) (2019) (another motion for new trial case citing *Kea* for the rule); see also *Wilkinson v. State*, 283 Ga. App. 213, 216-17 (641 SE2d 189) (2006) (holding trial court could not have improperly altered the verdict because a ruling in a bench trial is not a verdict).

the decision and a judge cannot take the decision from himself or herself. This Court has not found any other cases interpreting "verdict" as narrowly as the definition urged by Calhoun, and Calhoun offers none.

Because there is no textual or decisional authority requiring a narrow interpretation of "verdict," it is appropriate to apply the common usage of the term. Read in its most natural and reasonable way, as an ordinary speaker of the English language would, "verdict" encompasses a finding of guilt in a bench trial. See Webster's Ninth New Collegiate Dictionary (1985) (defining "verdict" as not only "the finding or decision of a jury on the matter submitted to it in trial" but also as "opinion, judgment"); Webster's Deluxe Unabridged Dictionary (2d ed. 1983) (defining "verdict" in part as "decision; judgment; opinion pronounced"); see also *McBrayer v. Scarbrough*, __ Ga. __, (__ SE2d __) (2023 Ga. LEXIS 221, 2023 WL 6611019) (Case No. S22G1152, decided Oct. 11, 2023) ("In ascertaining the ordinary meaning of a word that is not defined in a statute, it is often helpful to consult dictionaries that were in use when the statutes

17

were enacted. Although dictionaries offer a useful reference for any such analysis, they cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning. Nevertheless, they do provide a useful starting point." (cleaned up)).[7] Indeed, the Supreme Court of North Carolina has reached a similar conclusion. See *State v. Alexander*, 380 N.C. 572, 588-89 (869 SE2d 215) (2022) (citing Black's Law Dictionary and two other dictionaries to hold that "the term 'verdict' can be understood in a broader sense" than "'a jury's finding or decision on the factual issues of a case,'" depending on the context, structure, and history of the provision at issue (citation omitted)).[8]

Moreover, this Court routinely uses the word "verdict" to describe a judgment in a bench trial. See, e.g., *Session v. State*, 316

---

[7] The definition of "conviction" at issue here first appeared in the Rules and Regulations for the Organization and Government of the State Bar of Georgia in 1985. See 254 Ga. 873, 880 (1985) (amending State Bar Rule 4-102 to revise Standard 66).

[8] Additionally, as noted by the State Bar, both the PACER docket and Calhoun's notice of appeal reference the "verdict" in his criminal case as a result of his bench trial.

18

Ga. 179, 181 (887 SE2d 317) (2023) ("Similar to appeals from a jury trial resulting in a criminal conviction, on appeal from a bench trial, we view all evidence in the light most favorable to the trial court's verdict . . . ." (quoting *Jones v. State*, 307 Ga. 505, 506 (1) (837 SE2d 288) (2019))); *Torres v. State*, 314 Ga. 838, 838 (878 SE2d 453) (2022) (same); *Wimberly v. State*, 302 Ga. 321, 323 (806 SE2d 599) (2017) ("On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict . . . ." (quoting *Dougherty v. State*, 341 Ga. App. 120, 123 (799 SE2d 257) (2017))).

Thus, we see no reason judicial determinations of guilt would be excluded from the term "verdict," as it is used in Rule 1.0 (e). We see nothing in the context or structure of the Rules to support Calhoun's proposed interpretation of the meaning of "verdict" in the context of Rule 1.0 (e) in the absence of some indication that the Rules intend for there to be a distinction between convictions after jury trials and those after bench trials. Moreover, we know of no

19

reason for treating the two differently in matters of attorney discipline.

In sum, we can discern no basis for assigning to the term "verdict" the stricter meaning that would exclude convictions entered on a judge's finding of guilt. Thus, findings of guilt in bench trials constitute "verdict[s]" for the purposes of Rule 1.0 (e). As a result, the meaning of "convicted" in Rule 8.4 does not exclude Calhoun from either suspension pending appeal or the potential imposition of a maximum penalty of disbarment based on his convictions that were entered on a trial judge's finding of guilt. Further, because judicial determinations of guilt are "verdict[s]," it is not necessary for us to determine whether or not Rule 1.0 (e)'s list is exhaustive.

Next, we note that the Special Master's determination that Calhoun violated Rule 8.4 (a) (3) is premature, as the Special Master made no effort to analyze whether the conduct underlying Calhoun's misdemeanor convictions involved moral turpitude or related to his fitness to practice law. However, as the State Bar notes, Calhoun's

20

suspension does not hinge on this point since his felony conviction is sufficient to justify his suspension.

(b) *Whether Calhoun can be Disciplined for Committing a Felony Based on Conduct that Purportedly Amounts to Only a Misdemeanor Under Georgia Law.*

Calhoun's contention in this regard is without merit. Section 16-11-34.1 concerns a different crime which Calhoun did not commit, rendering it irrelevant here. Further, with respect to imposing attorney discipline, the Rules reflect that Georgia respects the classifications other jurisdictions assign to crimes. See Rule 4-106 ("[A] certified copy of a conviction in any jurisdiction shall be prima facie evidence of a violation of Rule 8.4 . . . ."); Rule 8.4 (b) (2) ("[T]he record of a conviction or disposition in any jurisdiction based upon a guilty plea, a plea of nolo contendere, a verdict of guilty or a verdict of guilty but mentally ill, or upon the imposition of first offender probation shall be conclusive evidence of such conviction or disposition . . . .").

(c) *Whether Comment [5] to Rule 8.4 Saves Calhoun from Discipline.*

21

This contention is also without merit. The Scope section of the Rules' Preamble provides that "[t]he comment accompanying each rule explains and illustrates the meaning and purpose of the rule. . . . The comments are intended as guides to interpretation, but the text of each rule is authoritative." Rules, Preamble and Scope, at Par. 21; see also *Mignott*, 2023 WL 6976464 *2 ("[A] comment to a rule cannot change that rule's text . . . ."). Comment [5] to Rule 8.4 does not nullify the imposition of discipline pursuant to the Rule, as urged by Calhoun, just because an individual charged with a violation of that Rule believed his conduct and cause to be righteous. Moreover, Calhoun's testimony reflects that he knew he would be charged at least "with some type of trespass" for his conduct on January 6 where he determined he would "take a misdemeanor for the cause," indicating that he knew that a valid obligation existed to refrain from entering the Capitol building to obstruct Congress's certification of the Electoral College votes. Further, it is not entirely clear that Comment [5] actually applies to Rules 8.4 (a) (2) and (3), as Rule 8.4 encompasses a number of different types of misconduct,

22

several of which seem like more obvious fits with the Comment. See, e.g., Rule 8.4 (a) (1) ("It shall be a violation [of the Rules] to: (1) violate or knowingly attempt to violate the [Rules], knowingly assist or induce another to do so, or do so through the acts of another.").

(d) *Whether the Special Master's Recommendation Would Violate Calhoun's Due Process Rights.*

In *Stoner*, where the attorney argued that suspending him from the practice of law before his appeals were final violated his right to due process, this Court declared that "[w]e find that promoting public confidence in the judicial system is a legitimate state end and that suspending attorneys upon conviction of a crime of moral turpitude, even before all appeals are final, is rationally related to that end." 246 Ga. at 582. Further, we have held in the context of attorney discipline based upon conviction of a crime that "all felonies are crimes involving moral turpitude." *Rehberger v. State*, 269 Ga. 576, 576 (502 SE2d 222) (1998). Accordingly, suspending Calhoun pending the outcome of his appeal does not violate his due process rights.

(e) *Conclusion.*

For these reasons, it is hereby ordered that W. McCall Calhoun, Jr. be suspended from the practice of law in this State until the final disposition of his direct appeal by the United States Court of Appeals for the Eleventh Circuit and until further order of this Court. He is also ordered to notify the State Bar's Office of General Counsel in writing within 10 days of the final disposition of his direct appeal, and he is further ordered to comply with the notification and other requirements of Bar Rule 4-219 (b).

*Suspension until further order of this Court. All the Justices concur.*