NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 21, 2026

S25Y1501. IN THE MATTER OF W. McCALL CALHOUN, JR.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master LaRae Dixon Moore, who recommends that the Court accept the petition for voluntary discipline filed by Respondent W. McCall Calhoun, Jr. (State Bar No. 103915) after the filing of a formal complaint. See Bar Rule 4-227(c). In his petition, Calhoun, who has been a member of the Bar since 1990, admits to violating Rule 8.4(a)(8) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102(d), and asks for a public reprimand pursuant to Bar Rule 4-102(b)(3). The maximum penalty for a violation of Rule 8.4(a)(8) is disbarment. The State Bar agrees that a public reprimand is appropriate under the circumstances of this case. However, having carefully reviewed the record, we disagree that a public reprimand is adequate for the

reasons discussed more fully below.

1. *Procedural History*

Calhoun was convicted of a felony and several misdemeanor federal offenses in connection with his participation in events at the United States Capitol on January 6, 2021, and this Court suspended him in an initial disciplinary matter pending the outcome of his appeal based on his violation of Rule 8.4(a)(2) (it shall be a violation of the Bar Rules for a lawyer to "be convicted of a felony"). See *In the Matter of Calhoun*, 317 Ga. 726, 734–36 (2023) (*Calhoun I*). In 2025, he filed an amended motion to lift the temporary suspension in this Court based on the vacatur of his felony conviction by the United States Court of Appeals for the District of Columbia on October 24, 2024, and subsequent dismissal with prejudice of the indictment resulting from his presidential pardon on January 20, 2025, for all offenses for which he was convicted, both felony and misdemeanor, related to events that occurred at the United States Capitol on January 6, 2021. In response, the State Bar asked this Court to deny the motion and remand the matter back to the Special Master

pursuant to Bar Rule 4-106(f) (providing that if this Court "orders the respondent suspended pending any appeal, upon the termination of the appeal," the State Bar "may petition the Special Master to conduct a hearing for the purpose of determining whether the circumstances of the termination of the appeal indicate [the need for further discipline]"). We denied the amended motion and remanded the case to the Special Master to determine whether the underlying conduct should be investigated and prosecuted further under the Georgia Rules of Professional Conduct. Upon remand, Calhoun filed a petition for voluntary discipline.

2. *Petition for Voluntary Discipline*

In his petition, Calhoun admits that, in late December 2020, he decided to travel to Washington, D.C. to protest the results of the 2020 presidential election, because he was "upset with the outcome of the election" and "believed that there was election interference and that the election was stolen." Formal Complaint ("FC") at 35. He traveled from his home in Americus to Washington, D.C. and was present at the United States Capitol on January 6, 2021 to protest

3

the 2020 United States Presidential Election. Calhoun admitted that he entered the Capitol Building and walked around the Capitol Building. He further admits that when he entered the building, he heard alarms going off and understood that he was entering a restricted building that he should not enter. Moreover, Calhoun admits he "understood [what he] was guilty of" and that he "could be charged with criminal trespass." FC at 36.

Calhoun stated that, by his conduct, he violated Rule 8.4(a)(8) when he committed the criminal act of trespassing and demonstrating in a restricted building, see 18 USC § 1752(a)(1), which he admitted under oath to doing in his criminal trial and in the show cause hearing in these disciplinary proceedings. See Rule 8.4(a)(8) (stating that it shall be a violation of the Rules for a lawyer to "commit a criminal act that relates to the lawyer's fitness to practice law or reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer, where the lawyer had

4

admitted in judicio, the commission of such act").[1] As discipline, Calhoun has asked for a public reprimand.

3. *State Bar's Response*

The State Bar filed a response before the Special Master and agreed that Calhoun's factual admissions are sufficient to authorize the imposition of discipline, and that he violated Rule 8.4(a)(8) by virtue of his admitted criminal conduct in violation of 18 USC § 1752(a)(1), a federal criminal statute that prohibits a person from knowingly entering or remaining in any restricted building without lawful authority to do so, and which is a misdemeanor violation. Moreover, the State Bar agreed that his criminal conduct was subject to discipline under Rule 8.4(a)(8)—a rule it notes is unique to Georgia and not part of the ABA Model Rules and that this Court has not directly examined in a written opinion—because (1) Calhoun admitted to committing criminal acts; (2) he admitted in judicio the

---

[1] Comment 3 to Rule 8.4 (misconduct), provides in relevant part that "a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving … serious interference with the administration of justice are in that category."

commission of those criminal acts; and (3) the criminal acts committed by Calhoun reflect adversely on his fitness as a lawyer. Finally, the State Bar agreed that, under the circumstances of this case and considering the ABA Standards for Imposing Lawyer Discipline, a public reprimand is appropriate.

4. *Special Master's Report and Recommendation*

After reciting the findings of fact and procedural history as set forth in Calhoun's petition, the Special Master concluded that Calhoun's factual admissions were sufficient to authorize the imposition of discipline. Moreover, the Special Master determined that the petition contained sufficient admissions of conduct to conclude that Calhoun violated Rule 8.4(a)(8). As for the ABA Standards, the Special Master concluded that Calhoun violated his duty to the public with his admitted criminal conduct; that he engaged in criminal conduct intentionally for the purpose of interfering with the election certification process; and that his conduct injured the public's confidence in the integrity of the officers of the court and the justice system. The Special Master then noted

6

that the presumptive penalty of a suspension was applicable in this case because the criminal conduct was committed intentionally and publicly for the purpose of disrupting a legal proceeding. See ABA Standard 5.12.

In deciding what sanction to recommend, the Special Master noted that the generally applicable penalty can be adjusted upward or downward depending on the weight assigned to the mitigating and aggravating circumstances. In terms of aggravating factors, the Special Master concluded that Calhoun had substantial experience in the practice of law, having been admitted to practice in 1990. See ABA Standard 9.22(i). As for mitigating factors, the Special Master concluded that Calhoun had no prior disciplinary record; lacked a dishonest or selfish motive; provided full and free disclosure of his misconduct and a cooperative attitude toward the proceedings; and expressed remorse. See ABA Standard 9.32(a), (b), (e), and (l). Regarding Calhoun's remorse, the Special Master noted that Calhoun's opinion regarding his actions had changed since the initial show cause hearing, as he now acknowledged that his conduct

7

was inappropriate and reflected poorly on the legal profession. Moreover, the Special Master noted that his conduct did not arise in the context of the representation of a client and that he had been suspended from the practice of law since November 7, 2023.[2] In sum, the Special Master concluded that because of the circumstances presented here, a public reprimand was warranted.

5. *Conclusion*

Having reviewed the entire record in this case, we disagree with the parties that a public reprimand is appropriate here. While it is true that we have never directly examined a Rule 8.4(a)(8) violation before, this subsection of Rule 8.4(a) provides discipline for committing a criminal act that reflects adversely on the lawyer's fitness as a lawyer and, therefore, Rule 8.4(a)(8) imposes discipline for conduct similar to that specified in Rule 8.4(a)(2), (3), and (4).

---

[2] The Special Master concluded that Calhoun's pardon could not be considered mitigating, as it does not operate to confer or restore a public office which was previously held, but which on account of the previous conviction and sentence was necessarily relinquished. See *Morris v. Hartsfield*, 186 Ga. 171, 173 (1938). Moreover, the Special Master noted a presidential pardon does not annul the act or affect the right of the court to punish a person holding a professional license for professional misconduct. See *In the Matter of Abrams*, 689 A.2d 6, 12–13 (D.C. Cir. 1997).

Violations of those subsections in general are considered very serious. See, e.g., *In the Matter of McCall*, 314 Ga. 200, 206 (2022) (holding that "a violation of Rule 8.4(a)(4) is among the most serious violations with which a lawyer can be charged."). And while violations of Rule 8.4(a)(2), (3), and (4) do not necessarily require it, they frequently result in disbarment. See *In the Matter of Barnes*, 320 Ga. 589, 590–91 (2024) (on Special Master's report and recommendation, disbarring attorney who violated Rule 8.4(a)(2) by being convicted of felony obstruction of a law enforcement officer and noting that "disbarment is an appropriate sanction in matters involving felony convictions for crimes of interference with the administration of justice, in this case felony obstruction of police"); *In the Matter of Head*, 320 Ga. 316, 316 (2024) (on Special Master's report and recommendation, disbarring attorney who violated Rule 8.4(a)(3) by pleading guilty to a misdemeanor involving moral turpitude, with the Special Master defining "moral turpitude" to include actions "done contrary to justice"); *In the Matter of Cummings*, 291 Ga. 654, 654–55 (2012) (disbarring attorney on

notice of discipline who violated Rule 8.4(a)(4) by submitting invoices for work she did not perform and making false allegations of improper conduct against city officials). The cases involving Rule 8.4(a)(2) and (3) violations are particularly relevant here, given that while Calhoun may have ultimately been pardoned for federal offenses, pardons do not prevent disbarment for the underlying activity that formed the basis of the crime that was later pardoned. See *Scott v. Leathers*, 78 Ga. App. 661, 664 (1949) ("disbarred attorney may not automatically be reinstated either by a special act of the legislature … or an executive pardon" (internal citations omitted)); *Payne v. State*, 52 Ga. App. 425, 426 (1936) ("reinstatement to the bar [does] not follow automatically from the grant of the pardon.").[3] See also *In the Matter of Beck*, 264 Ind. 141, 146–47 (1976) (citing *Payne* as part of the overwhelming line of authority nationwide to this effect).

Moreover, while it is true that Calhoun has been suspended

---

[3] *Leathers* and *Payne* were decided by the Court of Appeals before this Court made clear that the regulation of the practice of law was part of our inherent authority.

10

from practicing law since 2023, it would be improper to impose discipline in partial reliance on an involuntary interim suspension because we do not consider such a suspension to be mitigating. See *In the Matter of Warnock*, 272 Ga. 2, 4 (2000) ("[w]e disagree with the special master's conclusion that Warnock's … interim suspension … [is a] mitigating factor[ ]"). See generally *In the Matter of Huber*, 320 Ga. 314, 315 (2024) (accepting petition for voluntary surrender of license nunc pro tunc, because attorney had "demonstrated that he *voluntarily* stopped the practice of law" (emphasis added)).

Even in the absence of his admission here that he violated Rule 8.4(a)(8) based on a felony offense, Calhoun admitted to violating Rule 8.4(a)(8) based on a misdemeanor criminal act, which if not pardoned could have resulted in a Rule 8.4(a)(3) violation. See generally *Calhoun I*, 317 Ga. 726, 734 (noting that the "Special Master's determination that Calhoun violated Rule 8.4(a)(3) is premature, as the Special Master made no effort to analyze whether the conduct underlying Calhoun's misdemeanor convictions

11

involved moral turpitude or related to his fitness to practice law").

Moreover, as the State Bar noted in its response to the petition for voluntary discipline, the criminal acts committed by Calhoun reflect adversely on his fitness as a lawyer. See Rule 8.4(a)(8). As part of the State Bar's response to Calhoun's petition for voluntary discipline, it introduced Calhoun's social media posts from January 6, 2021, which clearly suggest that he intended to participate, willingly and knowingly, in a violent takeover of the Capitol to overturn the 2020 election and that he sought to interfere with the administration of justice. Calhoun commented on social media that he was part of a group that "physically took control of the Capital [sic] building in a hand to hand hostile takeover"; they "occupied the Capitol and shut down the Government"; he was one of the "first two hundred to rush up the steps and inside after the Vanguard had clashed hard with the police and had made them retreat"; they brought the "Government to its knees"; and they were "all going back armed for war." FC at 101. In addition, he commented that once in the Capitol building, they were met with a police barricade, which

12

they "push[ed] through," and that this caused "some people [to] bleed[] pretty badly." Id. at 100. Even more concerning were his comments directed towards certain members of Congress that the group intended to harm. Calhoun stated that they "stormed upstairs … looking for members of Congress" and that they then:

> kicked in Nancy Pelosi's office door and pushed down the hall towards her inner sanctum, the mob howling with rage – Crazy Nancy probably would have been torn into little pieces, but she was nowhere to be seen – then a swat [sic] team showed, and we retreated back to the rotunda and continued our hostile take over of the Capitol Building.

FC at 102–03.

If Calhoun was as involved as his posts indicate, then it is hard for us to see how anything less than disbarment can be accepted here. Accordingly, we reject the petition for voluntary discipline and remand this matter for further proceedings. See *ITMO Joshi*, 315 Ga. 477, 483–84 (2023) (rejecting petition for voluntary discipline and remanding the matter for consideration of additional serious allegations).

*Petition for voluntary discipline rejected. All the Justices concur.*

13